Argued July 16, affirmed September 23, 1970

# SCHAFER, *Respondent, v.* SUNSET PACKING COMPANY OF OREGON, *Appellant.*

474 P2d 529

*Ernest Bonyhadi*, Portland, argued the cause for appellant. With him on the briefs were Robert D.

Steinmetz, Hardy Myers, Jr., and Rives, Bonyhadi & Hall, Portland.

*Charles W. Creighton, Jr.*, Salem, argued the cause and filed the brief for respondent.

Before O'CONNELL, Chief Justice, and SLOAN, HOLMAN and HOWELL, Justices.

HOWELL, J.

Plaintiff, a berry grower, filed an action for damages against the defendant for breach of contract for failure to provide workers to harvest plaintiff's berry crop for 1967. The case was tried before the court without a jury and a judgment entered against defendant for $17,880.

On April 7, 1967, the defendant, a processor of fruit and berries, contracted to purchase at least a portion of plaintiff's berry crop and to provide 150 to 200 laborers to harvest the crop from June 1, 1967, to the end of the season. A recruiting fee of $15 per laborer was to be paid by plaintiff to defendant, and the plaintiff gave defendant a check for $2,000 as a payment on the contract. The defendant recruited the laborers in Texas, but they went to Idaho and remained there working in the beet harvest. On May 29, two days before the workers were due to arrive, the defendant notified plaintiff of the difficulty in securing the workers. On June 7 the defendant offered the services of 100 pickers from the defendant's own labor camp, but there were several conditions to the offer. Plaintiff would have to pay an additional $20 per ton for the picking, and the pickers could be used only as long as defendant had no need for them. Plaintiff rejected the offer and began hiring some workers from his

neighbors. On June 20 the defendant managed to supply 30 pickers who came to Oregon to pick cherries, but they remained with plaintiff only 10 days.

■■ For its first assignment of error the defendant contends the trial court erred in failing to find that it was excused from performance of the contract because of impossibility. The facts do not disclose that it was impossible for the defendant to comply with its contract and provide plaintiff with 150 to 200 pickers. It is true that the workers who were recruited in Texas failed to arrive in Oregon. On the other hand, the defendant was able to recruit workers for its own operation and was willing to make 100 of them available to plaintiff if plaintiff would pay an additional $20 per ton. As the defendant had contracted to provide the workers for plaintiff at $15 per person, it is entirely reasonable that the additional expense should have been the obligation of the defendant, not the plaintiff. It may have been unprofitable for defendant to have supplied the pickers, but the evidence does not establish that it was impossible. A mere showing of unprofitability, without more, will not excuse the performance of a contract. *Savage v. Peter Kiewit Sons'*, 249 Or 147, 432 P2d 519 (1968).

■ Also as an assignment of error, the defendant contends that the court erred in awarding damages when the evidence showed that plaintiff made no effort to minimize his damages.

A party injured by a breach of contract is required to do what reasonable care and business prudence would dictate in order to minimize his loss. *Enco, Inc. v. F. C. Russell Co.*, 210 Or 324, 311 P2d 737 (1957).

A few days before June 1, when the defendant was to deliver the pickers, it advised plaintiff of the diffi-

culty it was having in securing pickers, but that other pickers were expected to leave Texas on June 2 and Phoenix, Arizona, on June 6. On June 8 plaintiff was advised that the pickers were on the way. The facts disclosed that plaintiff could have hired pickers on the first of June, but that he did not want to fill his camps because of the assured arrival of pickers by defendant. When the defendant's pickers did not arrive, plaintiff called the employment office, advertised on the radio and solicited help from other growers who might have pickers available. He finally used what pickers were available in the neighborhood.

We conclude that the plaintiff exercised reasonable efforts and business prudence to minimize defendant's failure to provide the pickers.

■ However, the defendant criticizes the plaintiff for rejecting the defendant's offer of 100 pickers from its own camp and another offer from defendant of four busloads of children to pick plaintiff's berries. We have mentioned the conditions the defendant attached to its offer to supply 100 pickers from its own camp. The offer of the four busloads of children was conditioned also on plaintiff paying an extra $35 per day for each of four platoon leaders and 33 cents per mile for the buses, in addition to the picking charges. Apparently the defendant feels that the plaintiff was obliged to accept the offer regardless of the extra charges. "Where a defendant has an equal opportunity for performance of a contract, and equal knowledge of the consequences of nonperformance, such defendant cannot avoid damages by claiming that the injured party should have performed for him." *Enco, Inc. v. F. C. Russell Co., supra,* p 340.

■ For the defendant's final assignment of error

it contends that the record fails to support a finding that plaintiff suffered damages of $17,880 lost profits.

Recovery for lost profits will be allowed only if the loss is established by a reasonable degree of certainty. *Buck v. Mueller,* 221 Or 271, 351 P2d 61 (1960); *Douglas Const. v. Mazama Timber,* 256 Or 107, 471 P2d 768 (1970).

The defendant states that plaintiff is precluded from any recovery for loss of profits because he did not show that his berry farming operation had a consistent record of past profits. No evidence was offered as to whether plaintiff's past business had been profitable or unprofitable, but he had been raising strawberries for 38 years.

The basic requirement for recovery of loss of profits is that such loss must be established with reasonable certainty. McCormick, Law of Damages § 26, p 100 (1935). "In attempting to meet the requirement of certainty the plaintiff has various means at his disposal. * * * As with other rules of reasonableness, the degree to which such proof will succeed in establishing the reasonable certainty of profits must depend in large measure upon the circumstances of the particular case and thus will escape hard and fast rules of general applicability." 64 Harv L Rev 318, 319 (1950).

One of the means which may be used to establish the loss is a showing of a past history of successful and profitable operation of the business. *Buck v. Mueller, supra.* However, contrary to defendant's contention, we did not say in that case that it was the *only* way that loss of profits could be established or that it would be fatal to plaintiff's case if he did not show that the business had an established history of successful and profitable operation.

Loss of profits will not be denied even though plaintiff does not rely on a past history of profitable operations if they are established by other factual data to a reasonable certainty. *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.*, 66 Wash 2d 469, 403, P2d 351 (1965).

The facts in the instant case show that on May 26, 1967, immediately before the picking season, the plaintiff agreed to sell defendant "all of the strawberries harvested" from two parcels of the plaintiff's property. The defendant estimated the amount of the berries at 150 tons of Marshall and 100 tons of Northwest strawberries. Despite plaintiff's difficulty in obtaining pickers, he was able to deliver the following amounts to the defendant during the strawberry harvest:

*Northwest*

|  |  |  |
|---|---|---|
| No. 1 grade | 94,588 lbs. | |
| No. 2 grade | 2,830 lbs. | |
| Culls | 1,129 lbs. | 98,547 lbs. |

*Marshall*

|  |  |  |
|---|---|---|
| No. 1 grade | 208,156 lbs. | |
| No. 2 grade | 676 lbs. | |
| Culls | 680 lbs. | 209,512 lbs. |

Total Berries Delivered     308,059 lbs.

The difference between the amount delivered and the amount estimated to be delivered is 191,941 pounds. Applying the percentage of Grade 2 and cull berries in those delivered to the balance of 191,941 pounds would leave 188,632 pounds of berries. The defendant

paid 15.5 cents per pound which would amount to $29,-238 as the gross amount plaintiff would have received for the balance of the estimated crop.

The plaintiff testified that his picking costs were "a little bit over $100 a ton." He also testified that the other expenses were $2.23 per $100 of wages for State Accident Insurance Fund payments; $1 per ton to the Strawberry Commission, and $10 per ton for hauling. The total cost of harvesting would amount to $10,658. Based on these costs the plaintiff's lost profits would have amounted to $18,580. The trial court entered general findings in favor of plaintiff in the amount of $17,880.

We conclude that plaintiff's damages were established with reasonable certainty and that the judgment of the trial court is supported by substantial evidence.

Affirmed.