DELTA REFRIGERATION
COMPANY, INC.

v.

The UPJOHN COMPANY.

Civ. A. No. 750136.

United States District Court,
W. D. Louisiana,
Monroe Division.

May 25, 1977.

Bobby L. Culpepper, Holloway, Baker, Culpepper & Brunson, Jonesboro, La., for plaintiff.

Ronald Lee Davis, Jr., Theus, Grisham, Davis & Leigh, Monroe, La., for defendant.

DAWKINS, Senior Judge.

### RULING ON THE MERITS

In this diversity action, Delta Refrigeration Company (Delta) claims monetary damages from The Upjohn Company

(Upjohn) for materially misrepresenting facts concerning a polyurethane spray foam which the latter sold to the former. Defendant counterclaims for the outstanding balance on an account plaintiff has with Upjohn. Our jurisdiction rests upon 28 U.S.C. § 1332, and venue is proper.

## LIABILITY

Delta was incorporated in 1972. Several persons, who later owned and worked for plaintiff, had observed polyurethane being sprayed to insulate buildings. They decided to attend a week-long class in North Haven, Connecticut, which Upjohn prepared and presented for those learning the polyurethane business.

After attending that school, reviewing literature concerning the foam, and experimenting with small amounts of polyurethane, Delta officials began expanding their business. They purchased large quantities of the chemicals used in making the foam from Upjohn, and completed jobs for several customers in late 1972 and early 1973.

A combination of events in 1973 caused a shadow to fall over the polyurethane business nationwide. The Federal Trade Commission (FTC) began investigating complaints concerning burning characteristics of polyurethane. News media reports, and a special documentary report on national television, heightened public attention by showing that polyurethane was not as safe a building material as had been advertised.

The controversy surrounding polyurethane products caused plaintiff's business to grind to a screeching halt. Some smaller insulating projects were undertaken, but, by and large, its business became unprofitable because it could not find enough customers who felt the product was safe and economical.

Defendant supplied the necessary chemicals to produce CPR 425, a polyurethane foam used by plaintiff to insulate buildings for customers. In numerous trade journals, advertisements, and even at the North Haven training school, Upjohn represented its polyurethane as being self-extinguishing and safe. It published burn-retardancy factors, flame and heat resistance figures, easy application, and other characteristics concerning foam which supposedly made polyurethane a builder's gold mine and a fire marshal's dream.

Delta relied upon Upjohn's representations that CPR 425 was a safe and potentially profitable building material. It could not afford to test each material it bought so it relied upon the reputation and representations made by Upjohn. Delta officials testified that they would not have purchased defendant's polyurethane if they had known that the foam needed a protective coating or a sprinkler system to install it safely because these precautions significantly increased insulation costs of buildings.

Plaintiff seeks enhanced damages based on its claim that Upjohn deliberately misrepresented the chemicals in bad faith, and thus defrauded Delta. We find no evidence of fraud or bad faith on Upjohn's part. Consequently, the more remote damage, e. g., loss of plaintiff's business reputation, has not been proven. La.R.C.C., Art. 1934.

Since plaintiff here seeks attorney fees, defendant argues that plaintiff filed its complaint untimely.[1] Defendant contends that Delta is claiming damages for a redhibitory vice or defect[2] inasmuch as attorney fees are recoverable in such actions.

---

1. "The redhibitory action must be instituted within a year, at the farthest, commencing from the date of the sale.

"This limitation does not apply where the seller had knowledge of the vice and neglected to declare it to the purchaser.

"Nor where the seller, not being domiciliated in the State, shall have absented himself before the expiration of the year following the sale; in which case the prescription remains suspended during his absence." La.R.C.C., Art. 2534.

2. *Redhibition* is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice." La.R.C.C., Art. 2520.

La.R.C.C., Art. 2545. *Palmer v. Anchor Marine, Inc., et al.*, 331 So.2d 114 (La.App. 1st Cir., 1976). But, these may not be awarded where the claims are based upon an express warranty of quality. *Morein v. G. J. Deville Lumber Company*, 215 So.2d 208 (La.App. 3rd Cir., 1968).

As the Civil Code Article explains, redhibitory defects are hidden vices of which buyers are unaware when they purchase products or things. Here, Upjohn represented that its CPR 425 was flame-retardant and self-extinguishing, claims which the facts of this case show are not so, and were held by FTC to be misleading and unfair:

"PARAGRAPH SIXTEEN: In truth and in fact:

"(a) The aforesaid ASTM test standards are neither reliable nor accurate tests for determining, evaluating, predicting or describing the burning characteristics of Plastics Products under actual fire conditions.

"(b) The aforesaid descriptive terminology and expressions, including 'non-burning', 'self-extinguishing', '25 flame spread', and the like, neither reliably nor accurately describe the burning characteristics of Plastics Products under actual fire conditions." *In the Matter of: Society of the Plastics Industry, Inc., et al, before the Federal Trade Commission*, Docket No. C–2596, November 4, 1974. (Plaintiff's Exhibit No. 6, page 11.)

The thrust of plaintiff's claim is to recover, not for a hidden defect, a redhibitory vice; instead, it is to be awarded damages for breach of the express warranties Upjohn made when it sold the chemicals. Therefore, the proper prescriptive period (Statute of Limitations) is founded in La.R.C.C., Art. 3544—ten years—not the one-year period provided by Art. 2534.

Defendant similarly argues that plaintiff's claim is in the nature of a *delict*, or tort, and a one-year peremptive period for filing claims should apply. La.R.C.C., Art. 3536.

We find, however, that Upjohn misrepresented its product, though not with fraudulent intent. Hence, it breached its contractual representations made to plaintiff through its advertising and sales literature, and upon which plaintiff was entitled to rely when purchasing CPR 425.

Defendant claims that there was no restrictive buying or selling agreement confected between Upjohn and Delta, consequently, there was no contractual relationship between them. Although plaintiff and defendant were not parties to a written agreement or guarantee that CPR 425 was self-extinguishing, Upjohn advertised and sold it as having characteristics which it did not have, and failed to advise Delta as a purchaser, of its flammable qualities. Therefore, plaintiff properly seeks recovery for breach of contract.

Defendant contends that Delta officials made the decision to purchase polyurethane independently of Upjohn's advertisements, literature, and the knowledge of the product they acquired in North Haven. The evidence does not support that contention at all.

Delta's owners were intrigued with the foam after first seeing it being applied, but they only dabbled with it until they read the Upjohn literature, attended the school in Connecticut, and were led to believe that CPR 425 could be used economically for insulation in their construction business. In short, Delta relied upon Upjohn's representation that CPR 425 was a safe insulant. Had it known that a protective coating or a sprinkler system was needed to help prevent fire damage to the material and to the buildings in which it was applied, Delta probably would not have bought polyurethane because other urethane insulants would have been more economical.

Upjohn further argues that plaintiff's damage was caused by poor internal management, rather than misrepresentations concerning its product. Delta's business was increasing steadily until the adverse publicity concerning polyurethane was aired. Suddenly, public officials and others

managing large buildings lost interest in the product and would not consider using it for insulation. As interest faded, Delta's business rapidly declined.

■ Defendant attempts to excuse its misrepresentations by asserting a "then state of the art" defense. It claims that all companies which produced polyurethane chemicals were advertising their products as "non-burning" and "self-extinguishing." The simple fact is that Upjohn misrepresented CPR 425, and plaintiff relied on its claims to its detriment. We will not honor a defense of universal ignorance in promoting polyurethane to defeat plaintiff's claim.

## QUANTUM

■ After Delta was incorporated in 1972, it borrowed $60,000 from the Small Business Administration (SBA). The loan was confected so that Delta could purchase equipment, materials, and supplies which it needed in order to enter into the polyurethane business. Defendant stipulated that the loan was made to Delta. In its complaint, plaintiff seeks recovery of the full $60,000, plus $10,400, representing interest on the loan.

Plaintiff introduced into evidence a list of machinery and supplies which it bought for use in its polyurethane operation. Plaintiff's Exhibit No. 3. On the list, plaintiff showed the cost or "fair market value" of the items and their book value (we assume the items were depreciated for tax purposes).

Plaintiff claims that it is entitled to recover the full amount of the loan, plus interest. Delta has not proven the amount, or even the rate, of interest which it seeks; therefore, we cannot award it as an element of damage. Plaintiff's list of machinery and equipment totals approximately $46,500. Even if plaintiff spent that much on machinery, it has not been shown how it disposed of the remaining $13,500. The testimony indicated that some of the equipment, including two trucks, had been sold. There was no proof as to the amounts these sales produced. The record contains no evidence of concerted effort by plaintiff to sell the left-over equipment although some of it should have been readily marketable.

Plaintiff seeks $20,000 for "supplies on hand," in addition to the $60,000 for the SBA loan and $10,400 for interest on the loan. We cannot conclude from the evidence in the record that plaintiff is entitled to any of these elements of damage. The amount of interest has not been proven, the full disposition of the $60,000 has not been shown, and even with respect to the listed purchases, no *bona fide* effort has been made by plaintiff to dispose of them for their fair market value.

■ Plaintiff seeks $20,000 for "initial cash invested in the business." Several Delta personnel attended the North Haven polyurethane training course, but their expenses have not been shown with any degree of accuracy. Several witnesses testified concerning the approximate cost of the course, but we cannot award damages merely on pure speculation or conjecture. The facts simply do not show the true cost of the course to Delta, and it did not prove additional, initial investments or expenses; consequently, it is not entitled to an award for this item.

Delta lists as elements of damage "value of time, etc. invested in the business—$100,000 and damage to business repretation [*sic*]—$100,000." Proof of these two elements of damage is totally absent from the record. Delta employees worked on various jobs, and Exhibit Ward No. 1 shows labor costs on the projects, but the same Exhibit shows gross revenues which exceed labor costs on every job. There is no proof concerning cost of materials or other costs on the various jobs, and there is nothing showing any losses incurred by Delta.

In its complaint, plaintiff claims $100,000 for "damages for breach of contract." This broadly stated element of damage is not supported by the record. Plaintiff is not entitled to an award of general damage because, once again, it failed to introduce evidence proving the claim.

Plaintiff's post-trial brief reflects the inadequate proof of quantum in this law suit. Almost the entire brief is directed toward establishing liability and a few conclusory, unsupported remarks concerning quantum are found in the final paragraph.

Delta has had its "day in court." It clearly established that Upjohn misrepresented CPR 425 and thereby breached an express warranty; however, it has failed to prove by a preponderance of the evidence that it was damaged.

"A plaintiff must establish his case by a clear preponderance of the evidence. *Naquin v. Marquette Casualty Company,* 244 La. 569, 153 So.2d 395 (La.1963); *Campbell v. Diamond M. Drilling Company, Inc.,* 274 So.2d 842 (3rd Cir. La.App. 1973). *He must also prove with legal certainty every item of damages claimed. Foggin v. General Guaranty Insurance Co.,* 207 So.2d 176 (2nd Cir. La.App.1967); *Fox v. American Steel Building Company, Inc.,* 299 So.2d 364 (3rd Cir. La.App. 1974)." *Culpepper v. Natchitoches Parish School Board,* 333 So.2d 453 (La.App. 3rd Cir., 1976), writ denied, La., 338 So.2d 289 (1976). (Emphasis added.) (The passage quoted is from a case where the same counsel for plaintiff were involved.)

We deny defendant's counterclaim for $4,100 against plaintiff. Delta's last purchase from Upjohn totalled $4,600 of which plaintiff has paid $500. Following the adverse publicity, plaintiff no longer was able to find insulation jobs in which CPR 425 could be used; consequently, the last chemicals bought from Upjohn became useless and were discarded after they crystalized. Plaintiff is not required to pay the remaining balance on its account with Upjohn due to Upjohn's misrepresentations concerning the materials.

Plaintiff's counsel is ordered to prepare a judgment in accordance with this ruling, have it approved as to form by defendant's counsel, and submit it to us for signing within ten days.