**TEXASGULF INC., Plaintiff,**

v.

**UNITED GAS PIPE LINE COMPANY, Defendant,**

**Texas Gas Transmission Corporation, Intervenor.**

**Civ. A. No. 71–2253.**

United States District Court, District of Columbia.

Feb. 12, 1979.

James J. Bierbower, John T. Miller, Jr., Washington, D. C., for plaintiff.

W. DeVier Pierson, Peter J. Levin, James M. Costan, Paul Ryberg, Jr., Washington, D. C., for defendant.

## MEMORANDUM OPINION

GESELL, District Judge.

This civil action, in three separate counts, seeks damages for breach of contract, negligent misrepresentation and breach of fiduciary duty. Counterclaims have been filed. Various motions addressed to these pleadings are now before the Court, having been fully briefed and argued.

United contracted in 1967 to deliver natural gas to Texasgulf to meet the requirements of a sulphur mine then being constructed by the latter in Louisiana. Subsequently, nationwide shortages of gas developed and, beginning in 1970, United curtailed deliveries to Texasgulf and certain

other direct sale customers under plans set out in tariffs filed by United with the federal regulatory authority now known as the Federal Energy Regulatory Commission ("FERC"). This suit concerns in large part the interplay of these tariffs with United's contractual obligation to deliver gas to Texasgulf, with various alleged misrepresentations made by United in 1967 to induce Texasgulf to enter into the aforementioned contract, and with events claimed to have been within United's control leading to the curtailment. Extensive proceedings, denominated "Phase III," are currently underway before the FERC that consider these and comparable issues. Similar issues have arisen under numerous pipeline supply contracts of United and other pipelines as a result of the nationwide shortage of natural gas which has developed. *See generally Monsanto Co. v. FPC,* 149 U.S.App.D.C. 396, 463 F.2d 799 (1972); *Mississippi Power & Light Co. v. United Gas Pipe Line Co.,* 532 F.2d 412 (5th Cir. 1976), *cert. denied* 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1977); FERC Order of August 9, 1978 re: Docket Nos. RP 71–29 et al. (Phase III).

### Count I

█ United has moved for summary judgment on all of plaintiff's claims, or in the alternative, for the Court to stay its hand pending referral of the issues to the FERC and completion of the Phase III proceedings. As to Count I, the breach of contract claim seeking damages due to curtailment, material issues of fact remain in dispute and summary judgment must and will be denied.

█ A stay pending referral is, on the other hand, entirely appropriate under Count I and will be ordered. The primary jurisdiction of the FERC to determine the scope, effect, and validity of United's tariffs and curtailment plans cannot be reasonably questioned. In addition, several considerations dictate the instant referral as a legitimate exercise of the Court's discretionary authority. The FERC is the most knowledgeable and effective forum to determine the meaning, scope and exculpatory effect, if any, of the curtailment plans which it has approved and of the "without liability" Sections 12.1 and 12.3 in United's various tariffs. Proceedings before the FERC are currently underway involving these very issues, in which both United and Texasgulf are active participants. Importantly, these issues are being determined on the assumption that United would otherwise be liable to Texasgulf under traditional state law principles. In addition, several of the factors which led to the various curtailment orders are going to be reviewed. Therefore, the outcome of the FERC's proceedings will determine in large part, if not entirely, the proper resolution of this case. Moreover, whatever factual conclusions the FERC reaches will benefit any subsequent judicial proceeding, because of the agency's expertise and familiarity with the natural gas industry. Other federal courts have deferred to the FERC's primary jurisdiction in comparable circumstances, *see Mississippi Power & Light Co. v. United Gas Pipe Line Co., supra,* and the instant referral will encourage consistency in the results of the variety of litigations that have raised similar contract issues. In the end, the matter will have been expedited and expense saved.

### Count II

The plaintiff styles its second count as a claim for negligent misrepresentation.[1] According to this count, the defendant "negligently and carelessly misrepresented" the extent of its existent gas reserves to plain-

1. It is clear that plaintiff's Complaint does not state a claim sounding in fraud. An essential element of fraud, under Louisiana law, is that the defendant have intended to defraud the plaintiff. *See Buxton v. McKendrick,* 223 La. 62, 64 So.2d 844, 846 (1953); *Cotton States Chemical Co. v. Larrison Enterprises, Inc.,* 342 So.2d 1212, 1214 (La.App.1977). Plaintiff has not alleged this element. Second, the evidence, as developed by discovery, does not even arguably support such an element. Finally, plaintiff's papers in opposition to the defendant's motion for partial summary judgment on this count frame all of plaintiff's arguments in terms of negligent misrepresentation.

tiff Texasgulf prior to signing the 1967 contract, even though the defendant "knew, or should have known" at the time that the representations "were not adequate." The plaintiff alleges both actual and reasonable reliance upon these representations.

The sole statement upon which Texasgulf allegedly relied in this regard was apparently made on April 13, 1967—some six months before final execution of the 1967 contract—by Mr. Tom Ross, a United representative, to two Texasgulf employees. According to the deposition testimony of Texasgulf's Mr. Staffa, Mr. Ross "assured us that [United] could fulfill the contract for the life of the mine based upon the reserves that they had on the pipeline at that time." [2]

■■■ The parties apparently agree that Louisiana law controls with respect to all aspects of Count II. The Court finds that no cause of action sounding in negligent misrepresentation has been recognized under Louisiana law. It seems that the Supreme Court of Louisiana has never been presented with the question of whether Louisiana recognizes such a cause of action. *See Devore v. Hobart Mfg. Co.,* 359 So.2d 1108, 1111 (La.App.1978). The most recent state appellate level decision to address the issue, however, specifically declined to adopt the cause of action. *Id.,* 359 So.2d at 1110–1111. This opinion comported with prior state court decisions expounding on the nature of a cause of action for fraud. *See Polusky v. Allstate Petroleum, Inc.,* 180 So.2d 815, 819 (La.App.1965); *Cotton States Chem. Co. v. Larrison Enterprises, Inc.,* 342 So.2d 1212, 1214 (La.App.1977). The two state court cases cited by the plaintiff, *White v. Lamar Realty, Inc.,* 303 So.2d 598, 601 (La.App.1974), and *Davis v. Davis,* 353 So.2d 1060, 1064–65 (La.App.1977), are not

sufficient authority for this Court to find such a cause of action, since neither case did anything more than suggest that such a legal claim might exist in the real estate brokerage context. *See also Comm'r v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). The other case relied upon by the plaintiff, *Delta Refrigeration Co. v. Upjohn Co.,* 432 F.Supp. 124 (W.D.La.1977), *aff'd without opinion,* 575 F.2d 879 (5th Cir. 1978), is simply inapposite; it rested upon a theory of express warranty.

Were it so inclined, the Court would be particularly unwilling to find that a cause of action for negligent misrepresentation exists where involved is an arm's-length commercial transaction between two corporations where no special duty of care can be said to have arisen. As noted by one commentator, the majority of the few jurisdictions which recognize the cause of action limit it to situations in which the misrepresentation is made by a speaker who in the course of his business or profession supplies information for the guidance of others in their business transactions. Hill, *Damages for Innocent Misrepresentation,* 73 Colum.L. Rev. 679, 685–88 (1973). Accordingly, summary judgment on this count must be granted to the defendant.

### Count III

Count III of plaintiff's Complaint alleges that the defendant breached a fiduciary duty owed to plaintiff. Plaintiff's theory is that, by "virtue of defendant United's exclusive control over the dedicated gas reserves that underlay defendant United's ability to deliver gas pursuant to [the] contract, defendant United assumed a fiduciary duty to plaintiff Texasgulf to maintain and increase its gas reserves." It is further alleged that the defendant violated this

---

**2.** Even though the Court does not address the merits of the factual contentions made by the parties with respect to this count, it does note that the plaintiff has made out an extremely weak case, even under its own theory of negligent misrepresentation. Mr. Staffa's deposition testimony does not establish beyond a shadow of a doubt that Mr. Ross (now deceased) was stating anything more than a promise or prediction as to future events. Moreover, it is far from clear that Texasgulf actually relied upon Mr. Ross' statement when it decided to execute the 1967 contract; or that its reliance, if any, should be deemed reasonable since Texasgulf was at the relevant time a natural gas producer with access to other depositories of pertinent information.

duty by failing "to acquire additional gas reserves" and by releasing to third parties "gas reserves already dedicated to its system when it was unwise and imprudent to do so."

■ Again, Louisiana law concededly controls. That law, however, does not establish a fiduciary relationship merely because a seller possesses "exclusive control" over the *res* to be sold to the purchaser. Neither side has cited any Louisiana case where a fiduciary duty arose in circumstances analogous to those here presented. The plaintiff draws several inferences from Louisiana Civil Code Articles 1901, 1907 and 1908; but this Court will not read into these general provisions a cause of action which does not satisfy the fiduciary relationship prerequisites specifically set out in *State v. Hagerty,* 251 La. 477, 205 So.2d 369, 374–75 (1967), *cert. denied* 391 U.S. 935, 88 S.Ct. 1848, 20 L.Ed.2d 855 (1968). *See also Klotz v. Gertrude Gardner, Inc.,* 293 So.2d 601, 603 (La.App.1974); *Clinkenbeard v. Central Southwest Oil Corp.,* 526 F.2d 649, 653–54 (5th Cir. 1976).

■■ Under those standards, a fiduciary relationship arises only when the business transacted by the claimed fiduciary, "or the money or property which he handles, is not his own or for his own benefit, but for the benefit of another person . . . ." *State v. Hagerty, supra,* 205 So.2d at 375. Texasgulf makes no allegation and has been unable to show either that United's gas reserves were "owned" by Texasgulf prior to delivery or that the business in which United was engaged during the relevant time period was not for its own benefit, but rather for Texasgulf's benefit. Nothing more has been alleged or shown than that the two parties, after long, arduous, and hard-fought negotiations, entered in 1967 into an arm's-length agreement. Texasgulf also apparently concedes that United never expressly assumed any fiduciary duty. Consequently, the defendant is entitled to summary judgment on Count III.

Dismissal of Count III does not, however, mean that plaintiff may never assert or prove its claim that United improperly failed to maintain and increase its natural gas reserves in order to insure adequate deliveries of gas, or leased gas to third parties or took on new customers in an unwise and imprudent manner. These allegations may become pertinent should United—in any eventual breach of contract trial under Count I—attempt to justify its actions on the basis of *force majeure* or obeisance to governmental orders. *See Usrey Lumber Co. v. Huie-Hodge Lumber Co.,* 135 La. 511, 65 So. 627, 629–30 (1914). Necessarily, the proper parameters of that trial, as well as of the allegations which the Court would then address, will be determined by the FERC's resolution of the ongoing Phase III proceeding.

### Counterclaims

The defendant's first counterclaim seeks a declaration that the 1967 contract terminated on December 1, 1977, in accordance with the terms of Article XIV and that, as a result, Texasgulf owes the defendant either the price billed to (but not paid by) Texasgulf, or the fair value, of the gas which United supplied to Texasgulf subsequent to December 1, 1977. The defendant rests on the express terms contained in Article XIV of the 1967 contract. That provision appears to call for the contract's automatic termination if, as of December 1, 1977, the parties did not reach agreement on a new monthly rate. It is not disputed that the parties never arrived at any such accord.

In opposition, Texasgulf contends that, by operation of Louisiana law, the fixed price term in the 1967 contract was "suspended" during the period that United improperly curtailed gas deliveries to Texasgulf. Texasgulf rests in this regard on several cases wherein the Louisiana courts have tolled lease terms where the lessor improperly prevented the lessee from operating the lease, *see Gulf Refining Co. v. Hayne,* 148 La. 340, 86 So. 891 (1921); *Fomby v. Columbia County Development Co.,* 155 La. 705, 99 So. 537 (1924); *Williams v. James,* 188 La. 884, 178 So. 384 (1938).

At this summary judgment stage, the Court is without a sufficient factual foundation to determine whether or not the rationale of the cases cited by plaintiff applies or even should apply to this natural gas case. The effect of United's curtailments on the operation of Texasgulf's mine may turn out to be a pertinent consideration in this regard and stands as a disputed issue of fact as between the parties. In addition, Count I of the Complaint remains pending, and within that Count lie issues as to the defendant's fault in creating the FERC's various curtailment orders. The resolution of this counterclaim must, therefore, be stayed pending completion of the Phase III proceedings. Accordingly, the defendant's motion for summary judgment on its first counterclaim is denied in all respects.

In its second counterclaim United seeks recovery under the Emergency Natural Gas Act of 1977, Pub.L. 95–2, 91 Stat. 4 (the "ENGA"). From February through July 1977, United made purchases of natural gas, pursuant to orders issued under the ENGA, at prices substantially higher than those normally paid. Order No. 7 of the Administrator under the Emergency Natural Gas Act of 1977, Docket No. E77–92, 42 Fed. Reg. 22,146 (May 2, 1977), directed that "[a]ll charges . . . attributable to gas purchased" under Section 6 of the ENGA "shall be billed to all customers served by the interstate pipeline in proportion to the volumes received by each customer. . . ." *Id.* The sum in dispute is the amount which Texasgulf has refused to pay under the terms of this allocation order.

The defendant brings this claim into the wrong forum. Section 10(b) of the ENGA directs that the Temporary Emergency Court of Appeals "shall have exclusive original jurisdiction to review all civil cases and controversies under this Act, including any order issued, or other action taken, under this Act." The defendant is basing its right to collect a higher price for the emergency natural gas delivered to Texasgulf on the ENGA and Order No. 7. Accordingly, the Court must dismiss this counterclaim without prejudice. *See* Fed.R. Civ.P. 82.

The Court's orders are filed herewith.

## ORDER

This matter came before the Court on defendant's Alternative Motion For Referral of Issues to the Federal Energy Regulatory Commission and for Stay Pending Outcome of Such Referral. The Court has reviewed defendant's filings in support of its motion, including its memorandum of points and authorities, the appendices to said memorandum, its affidavits and its statement of material facts as to which there is no genuine issue. The Court has also reviewed plaintiff's memorandum of points and authorities in opposition to defendant's motion, and heard argument on the motion on January 15, 1979. The Court has concluded that the Federal Energy Regulatory Commission ("Commission") has primary jurisdiction over material issues in this case and that referral of such issues to the Commission for exercise of its primary jurisdiction, and a stay of all further proceedings in this case pending the outcome of such referral, is appropriate. Accordingly, it is this 12 day of February, 1979, hereby.

ORDERED: That there be referred to the Federal Energy Regulatory Commission for a full and adequate determination the following questions:

1. Does Section 12.1 or any other of United's tariff provisions or any general or specific orders of the Commission remove or limit United's potential contract liability to Texasgulf for curtailments?

2. Would the awarding of damages to Texasgulf for United's curtailments grant Texasgulf an undue preference or advantage in contravention of the Natural Gas Act?

3. What would be the effect of Section 12.3 of United's tariff upon United's potential contract liability to Texasgulf for curtailments?

FURTHER ORDERED: That all proceedings in this case be stayed until the

Federal Energy Regulatory Commission has made its determinations on the foregoing questions.