Argued and submitted June 10, affirmed in part; reversed in
part and remanded with instructions December 7, 1981

## WESTERN ENERGY, INC.,
*Respondent,*
*v.*
## GEORGIA-PACIFIC CORPORATION,
*Appellant.*

(No. A7808-14203, CA 16421)

637 P2d 223

T. Leonard O'Byrne, Portland, argued the cause for appellant. With him on the briefs was O'Byrne & Ingalls, Portland.

John M. Berman, Portland, argued the cause for respondent. With him on the brief was Spears, Lubersky, Campbell & Bledsoe, Portland.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

YOUNG, J.

## YOUNG, J.

The relevant facts of this litigation arose out of an arm's-length business transaction in Louisiana. After negotiations in the fall of 1977 and early 1978, the parties entered into an agreement for plaintiff to supply phenolic tar, a waste oil fuel, to defendant for its plant in Port Hudson, Louisiana. The case was tried on the basis that the substantive law of Louisiana applied.

Plaintiff alleged a cause of action for breach of contract and a cause of action for misrepresentation. The second cause of action was plead in two counts, i.e., negligent misrepresentation and fraudulent misrepresentation.[1] The jury awarded plaintiff damages on its cause of action for breach of contract and on its count for negligent misrepresentation.[2] On appeal defendant argues that, under the law of Louisiana: (1) it was error under the breach of contract claim to submit the issue of lost profits to the jury, and (2) the negligent misrepresentation count did not state facts sufficient to constitute a cause of action.[3]

For several years, defendant purchased a major portion of its phenolic tar requirements for fuel for its Port Hudson plant from a company known as Energy Supply, Inc., managed by Lyle Adams. In 1977, defendant's plant was temporarily closed by an explosion and, as a result, defendant had no present need for fuel. Energy Supply, Inc., went out of business when defendant, its principal customer, stopped operating. In August, 1977, Mr. Adams and two other individuals formed the plaintiff corporation for the purpose of selling and delivering propane. When it became known that defendant was going to reopen its plant, plaintiff initiated negotiations to sell and deliver to defendant all of its phenolic tar requirements for the No. 1 lime kiln.

---

[1] The trial court struck the fraudulent misrepresentation count, and plaintiff has not cross-appealed from that ruling.

[2] The jury awarded damages for breach of contract totaling $37,554.29, consisting of general damages of $25,000 and $12,554.29 for loss of profits. The award on the negligent misrepresentation count was $12,039.81. Defendant has not appealed from the award of $25,000 for breach of contract.

[3] We have reversed the order of defendant's assignments in order to facilitate our analysis.

Between October and December, 1977, plaintiff had several conversations with Bob Riha, the defendant's purchasing agent in Louisiana, who had authority to purchase fuel. In December, Riha assured plaintiff that defendant was going to purchase all of its phenolic tar requirements from plaintiff for the kiln for one year. The price was the same as that previously charged by Energy Supply, Inc. In January and February, 1978, Riha essentially reconfirmed defendant's intention to purchase its fuel needs from plaintiff. In reliance on defendant's assurances and with Riha's knowledge, plaintiff proceeded to acquire the necessary equipment, including trucks, to deliver the fuel. Plaintiff also arranged for and committed itself to purchase the fuel from a plant in Texas.

## DAMAGES FOR LOSS OF PROFITS

The trial court denied defendant's motion to strike the claim for damages for lost profits. On that issue the parties stipulated that Louisiana law applied. Defendant argues that Louisiana case law precludes recovery of lost profits by a new and untried venture, or, alternatively, if that is not the law, then, and in any event, plaintiff's evidence of anticipated future lost profits was too speculative to submit the issue to the jury.

Defendant cites *Tidwell v. Meyer Bros., Ltd.,* 160 La 778, 107 So 571 (1926), for the proposition that in Louisiana a new business cannot recover lost profits. In *Tidwell,* the plaintiff was engaged in an auto repair business and undertook to lease another building at a new location. The building was condemned before plaintiff moved to the new location. Plaintiff claimed that the new location would have resulted in greater profits. The Louisiana court denied the claim for lost profits because they "* * * are contingent and uncertain and not susceptible of proof with certainty," 107 So at 575, and not because an untried or new business was involved. We have not been directed to a Louisiana case that has denied lost profits damages because the business was new. Common sense dictates that the fact that a new business has no "past history" should not, *ipso facto,* deny a claim for lost profits.[4]

---

[4] In Oregon lost profits may be recovered, even by an untried venture. *See Schafer v. Sunset Docking,* 256 Or 539, 545, 474 P2d 529 (1970), discussing *Buck v. Mueller,* 221 Or 271, 351 P2d 61 (1960).

In *Folds v. Red Arrow Towbar Sales,* 378 So 2d 1054 (La App 1979), the court allowed the recovery of lost profits by a new venture. Proof of lost profits is discussed in *Folds:*

> "Although the rule has been variously stated, our courts are in general agreement that while damages for lost profits may not be based on speculation and conjecture they need only be proven within a reasonable certainty. * * * However, it is also well recognized that where damage (including loss of profits) and liability are certain and quantum is uncertain, courts are nonetheless required to award damages. * * * Furthermore, in cases where direct evidence is not available to establish the exact extent of loss caused by a breach of contract, resort to customary or foreseeable profit as a measure of damage is proper." (Citations omitted.) 378 So 2d at 1059.

The facts in *Folds* bear some similarity to the facts in the present case. There, the plaintiff held an exclusive distributorship for defendant's products. The plaintiff incurred expenses in promoting the distributorship, and the defendant refused to live up to its agreement to aid plaintiff in establishing the distributorship and allowed other distributors to compete with the plaintiff. The court allowed a claim for lost profits, noting that the plaintiff had some prior experience in a similar business and that there was some reasonable certainty that the plaintiff was deprived of future profits because of the defendant's refusal to honor the agreement.

■   In the present case, Adams, plaintiff's president, had been in charge of Energy Supply, Inc., when it was selling fuel to defendant. The anticipated profits from plaintiff's contract with defendant were ascertainable. Defendant agreed to buy all of its fuel needs for the lime kiln for one year at an agreed price. The kiln BTU requirements were known and that permitted the calculation of the amount of fuel needed to produce the required BTUs. With the fuel requirements established and the price of the fuel agreed upon, gross income could be computed, which, less estimated expenses, would produce the anticipated net profit. Plaintiff's evidence under the standard of "reasonable certainty" articulated in *Folds* was sufficient.[5]

---

[5] The record is not entirely clear to us how the question of the sufficiency of the evidence was raised in the trial court. We have reviewed the colloquy between

■ We conclude that the law of Louisiana permits the recovery of damages for lost profits of a new business venture when the profits may be projected and proven with "reasonable certainty." The trial judge properly denied defendant's motion to strike.

## NEGLIGENT MISREPRESENTATIONS

Defendant charges it was error for the trial court to rule that the law of Louisiana recognized a cause of action for the tort of negligent misrepresentation and overruled defendant's demurrer.

■ The narrow issue is whether Louisiana recognizes a cause of action for negligent misrepresentation between parties negotiating at arm's-length in a business or commercial setting. The elements of negligence in Louisiana are a duty, its breach, and damages resulting from the breach. *Callais v. Allstate Ins. Co.,* 334 So 2d 692 (La 1976); *Pence v. Ketchum,* 326 So 2d 831 (La 1976). The gist of defendant's argument is that it owed no duty to plaintiff.

The Louisiana Supreme Court's first opportunity to consider a cause of action for negligent misrepresentation arose in *Devore v. Hobart Mfg. Co.,* 367 So 2d 836 (La 1979). (The intermediate appellate court had held there was no cause of action for negligent misrepresentation in Louisiana. *Devore v. Hobart Mfg. Co.,* 359 So 2d 1108, 1110 (La App 1978)). In *Devore,* an employe of a school was injured by defective equipment in the school kitchen. Her attorney asked the school for the name of the manufacturer. The school mistakenly gave the name of the wrong manufacturer. When the attorney discovered the mistake, the statute of limitations had run against the actual manufacturer. The employe sued the school for negligent misrepresentation. A majority of the court affirmed the lower court but held that there exists under the statutory law of Louisiana a cause of action for negligent misrepresentation. 367 So 2d at 839. The court did not delineate the circumstances or the extent to which Louisiana law permits the cause of action but did discuss some of the essential elements, relying in part on Restatement (Second) of

---

the court and counsel immediately prior to the court instructing the jury. Given a fair reading, we are satisfied that defendant preserved the issue by a motion for a directed verdict.

Torts § 552.[6] The lower court had held that plaintiff had failed to meet the "pecuniary interest" test of the Restatement. The Supreme Court adopted a narrower view when it held that a defendant must have an *independent legal duty* to supply correct information. 367 So 2d at 839. The court found that the required duty was not shown to exist in the employer-employe relationship.

---

[6] Restatement (Second) of Torts, § 552 provides:

"Information Negligently supplied for the Guidance of Others

"(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

"(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

"(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

"(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

"(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them."

The extensive comments to § 552 and the illustrations deal with those acting in a professional capacity or those with some special expertise upon which the recipient of the information is specially relying. We find no illustrations dealing with business "adversaries" in the commercial sense. Some commentators, notably Hill, *Damages for Innocent Misrepresentation,* 73 Colum L Rev 679 (1973), and James and Gray, *Misrepresentation - Part I,* 37 Md L Rev 286 (1977), indicate that § 552 limits liability to situations involving a fiduciary duty or where one gives special or professional advice and does not ordinarily apply to situations involving business adversaries. Hill, *supra,* at 686-88 and James and Gray, *supra,* at 313. A source of § 552 was Justice Cardozo's decision in *Glanzer v. Shepard,* 233 NY 236, 135 NE 275 (1922), holding a *public* weigher liable to a buyer of beans for breach of a duty to weigh the beans accurately.

Plaintiff cites Prosser, *Law of Torts,* 706-07 (4th ed 1971), to support the argument that negligent misrepresentation should be actionable between adversaries in a commercial setting. Prosser's example concerns a professional dispensing advice and not a business adversary in contract negotiations. *See* Hill, *supra,* at 686-87, n 24, which points out the flaw in the Prosser reasoning.

Plaintiff's argument that defendant had a pecuniary interest in the representations does not coincide with comment c and d to subsection 1 of § 552, which indicates that pecuniary interest relates to those dispensing information for remuneration. Here, defendant did not make the representations in expectation of compensation from the information given, but as preliminary to the consummation of a contract.

After the intermediate appellate court decision and before the Supreme Court decision in *Devore, Texasgulf, Inc. v. United Gas Pipe Line,* 471 F Supp 594 (DDC 1979) was decided. In that case, a buyer of natural gas sought damages against the seller for breach of contract, negligent misrepresentation and breach of fiduciary duty. The buyer contended that the seller negligently misrepresented its gas reserves when the seller knew or should have known the reserves were inadequate. The court noted that the buyer had not established that the seller had stated anything more than a promise or a prediction of future events. The court found, based on the lower court's decision in *Devore,* that Louisiana did not recognize a cause of action for negligent misrepresentation. The court expanded its reasoning when it stated that it would be particularly unwilling to do so,

"* * * where involved is an arm's-length commercial transaction between two corporations where no special duty of care can be said to have arisen. As noted by one commentator, the majority of the few jurisdictions which recognize a cause of action limit it to situations in which the misrepresentation is made by a speaker who in the course of his business or profession supplies guidance of others in their business transactions. Hill, *Damages for Innocent Misrepresentation,* 73 Colum L Rev 679, 685-88 (1973)." 471 F Supp at 597.

Plaintiff cites *Maniscalco v. Shell Petroleum Corporation,* 176 La 492, 146 So 33 (1933), for the proposition that representations made in a commercial setting relating to future conduct can be actionable under Louisiana law. That case is inapposite. It deals with fraud in the context of slander of title.

The case of *French Market Plaza Corp. v. Sequoia Ins. Co.,* 480 F Supp 821, 824 (ED La 1979), concerned an insured who sued its insurer for negligently misrepresenting the terms of an insurance policy. The court observed that Louisiana had rejected that aspect of section 552 of the Restatement which provides that the duty not to misrepresent arises on the part of any person with a pecuniary interest who supplies information. Louisiana law based on *Devore* requires that a defendant have a *legal duty* to supply correct information.

■■ We conclude that the law of Louisiana does not recognize a cause of action for negligent misrepresentation between parties dealing at arm's length in a business or commercial setting, absent some special relationship giving rise to an independent and affirmative duty on the part of the party making the representation. Under the facts of the present case, we have found no relationship between these parties, negotiating as business "adversaries," that created such a duty on the part of defendant not to misrepresent negligently. Accordingly, defendant's demurrer to that count of plaintiff's second cause of action should have been allowed.

■ Plaintiff argues that if Louisiana law does not recognize the cause of action, then we should find that under Oregon law such an action is cognizable and allow plaintiff to recover its damages because of the "contacts" the parties had with Oregon. Defendant counters that plaintiff cannot raise this argument, because it did not cross-appeal from the trial court's ruling that Louisiana law applied. The rule is otherwise. In *Artman v. Ray,* 263 Or 529, 533, 501 P2d 63, 502 P2d 1376 (1972); *see also, Budget Rent-a-Car v. Multnomah Co.,* 36 Or App 347, 584 P2d 767 (1979).

Plaintiff contends that the controlling contacts are: (1) both plaintiff and defendant have their principal places of business in Oregon; (2) the representations made by defendant were received in Oregon; and (3) plaintiff suffered its damages in Oregon.

■ Oregon cases have looked to the Restatement (Second) Conflicts of Law to resolve conflict of law issues in tort actions. *Casey v. Manson Constr. Co.,* 247 Or 274, 428 P2d 898 (1967); *Fisher v. Huck,* 50 Or App 635, 624 P2d 177 (1981). Section 148 of the Restatment addresses the torts of fraud and negligent misrepresentation. *See* comment a to section 148.[7]

---

[7] Restatement (Second) Conflict of Laws, § 148(2) provides:

"When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

Applying the six criteria of the Restatement, the place where plaintiff acted in reliance upon defendant's representations was primarily Louisiana, where plaintiff undertook preparations to supply the fuel. Plaintiff received representations in both Oregon and Louisiana, but on balance the primary locale was Louisiana. It was in Louisiana that plaintiff's vice president discussed the final details of the contract with defendant's purchasing agent. Defendant made its representations in Louisiana. Both parties were headquartered in Oregon. The tangible thing, i.e., the fuel, was for delivery in Louisiana, where plaintiff was to perform. Balancing these contacts, the trial court properly decided that the law of Louisiana applied.[8]

■ Finally, plaintiff contends that, if neither Oregon or Louisiana recognizes a cause of action for negligent misrepresentation, we should find that the trial court erred in striking plaintiff's second count alleging fraudulent misrepresentation and seeking compensatory and punitive damages, and remand the case for trial on the fraud count. To raise that issue a cross-appeal was required. *Artman v. Ray, supra.*

Affirmed in part; reversed in part and remanded with instructions to enter an amended judgment by deleting the award of damages to plaintiff on the negligent misrepresentation count.

---

"(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

"(b) the place where the plaintiff received the representations,

"(c) the place where the defendant made the representations,

"(d) the domicil, residence, nationality, place of incorporation and place of business of the parties,

"(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

"(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant."

[8] The stipulation of the parties that the law of Louisiana applied with respect to the cause of action for breach of contract is further support for the conclusion that the significant "contacts" were in Louisiana.