COACHMEN INDUSTRIES, INC.,
Appellant/Cross-Appellee,

v.

SECURITY TRUST & SAVINGS BANK
OF SHENANDOAH,
Appellee/Cross-Appellant.

No. 67592.

Supreme Court of Iowa.

Feb. 16, 1983.

Scott H. Peters of the Peters Law Firm,
P.C., Council Bluffs, for appellant/cross-appellee.

Harold N. Schneebeck, Jr., of Brown,
Winick, Graves, Donnelly & Baskerville,
Des Moines, for appellee/cross-appellant.

Considered by LeGRAND, P.J., and
McCORMICK, McGIVERIN, LARSON, and
SCHULTZ, JJ.

McCORMICK, Justice.

This case involves competing claims by creditors of a bankrupt recreational vehicle dealer. Plaintiff Coachmen Industries, Inc., as assignee of the holder of a purchase money security interest, sought to recover proceeds of sale of two recreational vehicles from defendant Security Trust & Savings Bank of Shenandoah, holder of a general security interest. The trial court awarded plaintiff judgment for the proceeds of one sale but denied recovery for the other. Plaintiff's appeal challenges the court's failure to allow recovery of the proceeds of both sales and the failure to allow interest from the date the money was due. Defendant's cross-appeal challenges plaintiff's right to any recovery. We reverse and remand on plaintiff's appeal and affirm on the cross-appeal.

The material facts are not disputed. In January 1977 Harry Rees organized a recreational vehicle sales business in Shenandoah called Ponderosa R.V. Center. Ponderosa subsequently opened a branch at Red Oak. In February 1977 Ponderosa executed and delivered a general security interest to defendant on all vehicles, proceeds, accounts receivable, contract work and rights. This agreement was perfected on February 18, 1977. In November Ponderosa executed and delivered a purchase money security interest to Finance America Private Brands, Inc., a corporation affiliated with plaintiff. The agreement covered the dealer's inventory of vehicles and other merchandise sold to Ponderosa by plaintiff. This purchase money security interest was perfected December 29, 1977. Plaintiff is the assignee of Finance America Private Brands, Inc., in the present case.

In November 1978 Ponderosa owed defendant more than $64,000. On November 6, 1978, Mr. and Mrs. Duane Young paid Ponderosa $9,352 for a recreational vehicle on which plaintiff held its purchase money security interest. On the same date Ponderosa wrote a check to Finance America in that amount on its account with defendant. The next day Ponderosa deposited the Young check in the account. From then

until November 17, 1978, the account balance exceeded that amount. On that date, however, defendant set off the checking account balance of $9,623.05 in partial payment of Ponderosa's debt to it. On November 20, 1978, Finance America presented Ponderosa's check for payment, and it was returned because of insufficient funds in the account to pay it. This constitutes the basis for plaintiff's first claim to sale proceeds.

On November 27, 1978, Ponderosa filed a Chapter XI bankruptcy petition. On December 4, 1978, Ponderosa sold a recreational vehicle on which Finance America held a purchase money security interest to Gerald Bower. A 1976 recreational vehicle was received in trade. In March 1979 defendant was permitted to reclaim the Bower trade-in in the bankruptcy proceeding. On March 13, 1979, defendant gave Finance America notice of its intention to sell the reclaimed collateral, including the Bower trade-in, by private sale commencing March 26, 1979. Finance America did not notify defendant of any claimed security interest in any of the collateral to be sold.

Defendant proceeded with the sale and received $10,638 for the Bower trade-in. Its expenses of sale attributable to that vehicle were $918.71. In May 1979, Finance America inquired of the bankruptcy trustee concerning the disposition of the proceeds of the Bower sale, which, of course, would include the trade-in. In July Finance America for the first time learned of the trade-in while taking a deposition of Harry Rees. On September 4, 1979, Finance America made its first demand of defendant for the proceeds of that sale. Defendant refused the demand, and this situation constitutes the basis for plaintiff's second claim for sale proceeds.

In the present action plaintiff sought judgment for the proceeds of the Young sale and for the proceeds of sale of the Bower trade-in, less expenses of that sale. In giving plaintiff judgment for the proceeds of the Young sale, the court held that Finance America's purchase money security interest took priority over defendant's com-

mon law right of setoff and general security interest. Interest was awarded to plaintiff at ten percent per annum from the date of judgment. In denying judgment on plaintiff's claim to the proceeds of sale of the Bower trade-in, the court held plaintiff was barred from recovery by estoppel.

On plaintiff's appeal the issues are whether the court erred in failing to grant prejudgment interest on the award and in applying the doctrine of estoppel to bar recovery of the proceeds from sale of the trade-in. On defendant's cross-appeal the issue is whether the court erred in refusing to give priority to its right of setoff and its general security interest in the proceeds of the Young sale. We will treat the cross-appeal first.

I. *The cross-appeal.* Defendant contends it had a priority right to the proceeds of the first sale based on its common law right of setoff and its general security interest. We disagree.

Pursuant to section 554.9104(i) of the Iowa Code (1981), Article 9 of the Uniform Commercial Code does not affect "any right of setoff." This only means that the common law right of a bank to set off a general deposit against a depositor's matured debt is not changed by the statute. The right of setoff is not a security interest. This does not mean, however, that a right of setoff automatically has priority over security interests.

■ The present case involves conflicting interests in proceeds of sale of collateral. The issue of priority is governed by section 554.9306. *See Citizens National Bank v. Mid-States Development Co.,* 177 Ind.App. 548, 380 N.E.2d 1243 (1978); *Associate Discount Corp. v. Fidelity Union Trust Co.,* 111 N.J.Super. 353, 268 A.2d 330 (1970). Under that provision, a right of setoff takes priority over a perfected security interest only in certain circumstances after insolvency. *See* § 554.9306(4)(d)(i). Because the setoff occurred before insolvency in this case, plaintiff's purchase money security interest in the proceeds of sale takes priority. *See* § 554.9306(2); *Citizens National Bank v. Mid-States Development Co.,* 177 Ind.App.

at 557, 380 N.E.2d at 1248 ("The effect of this Section is to give the Chapter nine secured party, upon a debtor's default, priority over 'anyone, anywhere, anyhow' except as provided by the remaining Code rules.").

■ Moreover, the statute makes a purchase money security interest prior in right to a general security interest under the circumstances in this case, even though defendant's security interest was perfected earlier. *See* § 554.9312(3). The fact that the proceeds were commingled with other funds of the debtor does not defeat this priority by making them unidentifiable. The proceeds are identifiable in their entirety within the meaning of the statute because the account balance always exceeded the amount of the proceeds during the period involved. *See Michigan National Bank v. Flowers Mobile Home Sales, Inc.,* 26 N.C. 690, 217 S.E.2d 108 (1975).

The trial court did not err in awarding plaintiff judgment for the proceeds of the first sale.

II. *The appeal: estoppel.* Plaintiff contends it was also entitled to judgment for the proceeds of the second sale. Under section 554.9306(2) it was entitled to priority in the proceeds of sale of the Bower trade-in unless barred by the doctrine of estoppel as held by the trial court. We assume, without deciding, that the doctrine of equitable estoppel is available under the Uniform Commercial Code. *Cf. Warder & Lee Elevator, Inc. v. Britten,* 274 N.W.2d 339, 341–42 (Iowa 1979) (doctrine of promissory estoppel not displaced by UCC statute of frauds section 554.2201). Because the doctrine is equitable, our review of evidence on this issue is de novo.

■ The elements of equitable estoppel are a false representation or concealment of material facts, a lack of knowledge of the true facts on the part of the actor, the intention that the misrepresentation or concealment be acted upon, and reliance on it by the party to whom made, to that party's prejudice and detriment. These elements must be proven by clear and convinc-

ing evidence. *Johnson v. Johnson,* 301 N.W.2d 750, 754 (Iowa 1981).

■ Defendant asserts Finance America misrepresented a material fact by failing to reveal its interest in the vehicle when it received notice of the proposed sale in March 1979. The evidence shows, however, that Finance America did not know the Bower vehicle had been taken in trade upon sale of secured collateral until July 1979. We do not believe its failure to notify defendant of its interest in March or even until September can fairly be characterized as a misrepresentation. Furthermore, no evidence was adduced to show defendant suffered any prejudice or detriment. Defendant admittedly is entitled to reimbursement for its expenses of sale. Otherwise it stands to lose nothing by giving up the sale proceeds that it would not have lost if the collateral had been claimed when notice of sale was given. This is not a situation, for example, where defendant forewent a right to pursue other assets because it thought it was entitled to retain the proceeds.

We conclude that the trial court erred in finding that the defense of estoppel was established. Plaintiff should have been awarded judgment for $9,719.29, representing the net proceeds upon sale of the Bower trade-in.

III. *The appeal: interest.* Judgment for the proceeds of the first sale was entered on July 31, 1981, and interest at ten percent per annum was allowed from that date. Plaintiff contends it was entitled to five percent interest on that debt from November 17, 1978, the date the debt became due, until June 29, 1979, the date plaintiff's petition on this portion of its claim was filed. After that, according to plaintiff, interest should have been allowed at the annual rate of ten percent.

Two statutes are involved. Under section 535.2(1)(b) interest is allowed at a five percent annual rate on money from the time it becomes due unless the parties have agreed otherwise. Because the debt was liquidated, that provision applies here. *See Vorthman v. Keith E. Myers Enterprises,* 296 N.W.2d 772, 778 (Iowa 1980). The second statute is section 535.3. It provides that interest on the amount of a judgment "shall accrue from the date of commencement of the action." This provision was effective January 1, 1981. When the present case was tried, this court had not decided that the statute was applicable to actions filed before its effective date where judgment was entered after that date. That decision was made in *Janda v. Iowa Industrial Hydraulics, Inc.,* 326 N.W.2d 339, 343–45 (Iowa 1982).

■ Thus plaintiff is correct in his contention that interest should have been awarded on the $9,352 judgment at five percent per annum from November 17, 1978, to June 29, 1979, and at ten percent per annum thereafter until paid.

Upon remand plaintiff will also be entitled to judgment for the $9,719.29 net proceeds of the second sale, with interest at five percent per annum from September 4, 1979, to December 31, 1979, the date of filing its amended petition seeking recovery of those proceeds, and at ten percent per annum thereafter until paid.

REVERSED AND REMANDED ON THE APPEAL; AFFIRMED ON THE CROSS–APPEAL.