Edward M. MEIER and Evadine Meier, Appellants,

Joseph Meier, Karen Meier, and Mark Meier, Plaintiffs,

v.

ALFA–LAVAL, INC. and Kramer Brothers Dairy Supply, Inc., Appellees.

No. 88–1755.

Supreme Court of Iowa.

April 18, 1990.

Rehearing Denied May 23, 1990.

577

Tom Riley and David J. Smith of Tom Riley Law Firm, P.C., Cedar Rapids, for appellants.

Robert D. Houghton and Diane Kutzko of Shuttleworth & Ingersoll, P.C., Cedar Rapids, and Ludwig B. Gartner, Jr. and Gerard Nolting of Faegre & Benson, Minneapolis, Minn., for appellee Alfa–Laval.

Gene Yagla and John A. Stitely of Lindeman & Yagla, Waterloo, for appellee Kramer Brothers Dairy Supply, Inc.

Considered by HARRIS, P.J., and SCHULTZ, LAVORATO, SNELL and ANDREASEN, JJ.

SCHULTZ, Justice.

This is an action by dairy farmers against the manufacturer and dealer of a milking machine system for damages to their dairy operation caused by that system. On July 26, 1977, Edward and Evadine Meier contacted a dairy equipment dealer, the partnership of Kramer Brothers Dairy Supply, and purchased a new milking machine system manufactured by defendant Alfa–Laval, Inc. (Alfa). The system had four milking units. In 1978 the Meiers added two new units from the same dealer and manufacturer. Later that year the dealership changed from a partnership to a corporation, Kramer Brothers Dairy Supply, Inc., with the partners as the principal shareholders. The corporation sold the Meiers six replacement milking units in 1979 and continued to service and repair their dairy operation.

Plaintiffs assert that the milking system was defective because the motorized pump which produced the vacuum needed to run the system was inadequate. They presented evidence of problems caused by "fall-offs and squawking" from that portion of the unit attached to the cows' teats. They claimed that these abnormalities occurred when the system was installed but increased when the two units were added in 1978. They claimed that the inadequate vacuum caused their dairy herd to suffer continual mastitis, an inflammation of the mammary glands which reduces milk production and causes long-term damage to the cows.

Plaintiffs commenced this action in 1985 against the incorporated dealer and the

manufacturer, claiming breach of an oral contract, breach of the implied warranty of fitness for a particular purpose, negligence in designing and installing the system, and negligent misrepresentation. Defendants pled the affirmative defenses of comparative fault and the statute of limitations.

The trial court denied a pretrial motion for summary judgment, and the action was tried to a jury. The court dismissed the negligence claim growing out of the installation of the system and the claims of other members of the Meier family against the defendants. The court instructed the jury to consider the Kramer Brothers partnership and corporation as one entity. As to the claim against the manufacturer, the jury was instructed that its responsibility was derivative and that plaintiffs had to prove that Kramer Brothers was Alfa's agent. The court submitted the three remaining theories of liability and the defenses based on comparative fault and agency on special verdict forms. The court further instructed the jury that the statute of limitations defense was valid unless plaintiffs established by clear and convincing evidence that defendants were equitably estopped from raising it. The jury also was required to return special verdict forms on the issue of estoppel.

The jury found for the plaintiffs on each issue and apportioned fault by attributing sixty-seven percent to defendants and thirty-three percent to plaintiffs. The court entered a judgment against both defendants after reducing the damages by the amount of plaintiffs' fault.

Defendants filed a motion for judgment notwithstanding the verdict, which was overruled, and a motion for a new trial, which was granted. The court ruled that it had erred when it instructed the jury to treat the partnership and corporation as one entity.

Plaintiffs appeal the ruling granting a new trial. Each defendant cross-appeals. We hold that the trial court erred in failing to grant defendants' motions for directed

verdicts based on their claims of insufficient evidence to generate a jury issue on equitable estoppel and negligent misrepresentation. This determination is fatal to plaintiffs' claims, and we need not discuss other issues on appeal. Consequently, we reverse the ruling of the trial court and remand for an order dismissing plaintiffs' action.

I. *Statute of Limitations.* This action was brought on May 14, 1985. All parties concede that the relevant statute of limitations for the commencement of the action was five years. *See* Iowa Code § 614.1(4) (1985).

In response to defendants' assertion of the statute of limitations defense, plaintiffs claim the benefit of the discovery rule and the doctrine of equitable estoppel. The court rejected the discovery rule,[1] and this ruling is not at issue on appeal. The court did submit the issue of equitable estoppel to the jury, which found that the dealer did "make repairs and assurances so that plaintiffs did not file their lawsuit within the statute of limitations ... five years from installing the additional two milking units." Based on this special verdict, the court concluded that defendants were estopped from raising the statute of limitations as a defense.

All parties concede that under proper circumstances equitable estoppel is one of the recognized defenses to the application of the statute of limitations. *See Beeck v. Aquaslide 'N' Dive Corp.,* 350 N.W.2d 149, 157 (Iowa 1984); *Coachman Indus. v. Security Trust & Sav. Bank,* 329 N.W.2d 648, 650 (Iowa 1983). The party seeking an exception to the expiration of the limitations period has the burden of proving the exception by clear and convincing evidence. *Beeck,* 350 N.W.2d at 157. The grounds for equitable estoppel are as follows: (1) The defendant has made a false representation or has concealed material facts; (2) the plaintiff lacks knowledge of the true facts; (3) the defendant intended the plaintiff to act upon such represen-

---

1. In rejecting the discovery rule the court alluded to Ed Meier's testimony regarding the presence of "squawks and fall-offs" in 1977, their doubts about the pump's adequacy and their suspicion that it was a cause of their problems before 1979.

tations; and (4) the plaintiff did in fact rely upon such representations to his prejudice. *Coachman*, 329 N.W.2d at 650.

On appeal, the defendants claim that their motions for directed verdicts and their objections to an instruction on the issue of equitable estoppel should have been sustained. When viewed in the light most favorable to the plaintiffs the trial court must find the evidence sufficient as a matter of law to sustain the allegation. *Rodgers v. Baughman*, 342 N.W.2d 801, 804 (Iowa 1983).

In its rulings during trial and on posttrial motions, the court relied upon the theory of repair estoppel combined with defendants' assurances to conclude a jury issue was present. It fashioned its instruction to require proof that the dealer had made alterations or repairs to the milking system after installation and had additionally made written or verbal assertions that plaintiffs' system would operate as warranted or contracted. Defendants attack the theory of repair estoppel and also maintain that the verbal assurances do not trigger a fact question on equitable estoppel.

■ We first turn to the issue of repair estoppel. This theory is an offshoot of the doctrine of equitable estoppel. Estoppel is triggered when false representations induce the plaintiff into inaction to his detriment under the statute of limitations. Whether repairs can serve as the equivalent of misrepresentations is an issue of first impression for our court.

Cases from other jurisdictions which address the issue of repair estoppel are not in accord. One view is that repairs to damaged property accompanied by consumer reliance tolls the period of limitations. *Mason v. County of Mobile*, 410 So.2d 19, 21 (Ala.1982); *Ashley v. Volkswagen of Am., Inc.*, 380 So.2d 702, 707 (La.Ct.App.1980). In *City of Birmingham v. Cochrane Roofing & Metal Co.*, 547 So.2d 1159, 1167 (Ala.1989), the Alabama court limited the application of the doctrine by requiring a standard of reasonable reliance.

There are other jurisdictions which hold that while repairs alone are not sufficient, repairs and assurances that the remedies have cured or shall cure the defect will interrupt the limitations period. *Southern Cal. Enters., Inc. v. D.N. & E. Walter Co.*, 78 Cal.App.2d 750, 178 P.2d 785, 788 (1947); *Ranker v. Skyline Corp.*, 342 Pa.Super. 510, 516, 493 A.2d 706, 709 (1985). *Bowman v. Oklahoma Natural Gas Co.*, 385 P.2d 440, 445 (Okla.1963).

Many jurisdictions do not recognize that repairs and assurances will either toll or estop the enforcement of the limitations period. *Triangle Underwriters v. Honeywell, Inc.*, 604 F.2d 737, 743 (2d Cir.1979); *Bobo v. Page Eng'g Co.*, 285 F.Supp. 664, 667 (W.D.Pa.1967), *aff'd*, 395 F.2d 991 (3d Cir.1968); *Zahler v. Star Steel Supply Co.*, 50 Mich.App. 386, 390, 213 N.W.2d 269, 270 (1973); *Neal v. LaClede Gas Co.*, 517 S.W.2d 716, 719 (Mo.Ct.App.1974); *Bishop–Babcock–Becker Co. v. Jennings*, 245 S.W. 104, 105 (Tex.Civ.App.1922). In *Neal* the Missouri court stated that the proof supporting estoppel must be absolute and unequivocal. 517 S.W.2d at 719. It rejected an estoppel claim based on repeated efforts to repair and assurances of a successful operation. *Id.*

Still other cases cite evidence of a party's additional positive efforts beyond repairs and assurances which result in the failure to bring a timely action. *Dillon County School Dist. v. Lewis Sheet Metal Works, Inc.*, 286 S.C. 207, 219, 332 S.E.2d 555, 561–62 (Ct.App.1985) (in addition to repairs and assurances defendants indicated litigation would not be required), *cert. dismissed*, 343 S.E.2d 613 (1986); *see also Beckenstein v. Potter & Carrier, Inc.*, 191 Conn. 150, 159, 464 A.2d 18, 23 (1983) (repairs not sufficient unless there is evidence repairs were made in order to avoid lawsuit and party actually relied upon repairs in not filing suit).

In developing our own rule, we look to the purpose of the doctrine of equitable estoppel. To prevent fraudulent and stale actions our legislature has designated time periods in which a claim must be brought. *State v. Gansz*, 376 N.W.2d 887, 891 (Iowa 1985). Equitable principles may alleviate the harshness of the time bar in cases when the party seeking the advantage of

this rule cannot in good conscience cast aside his prior acts or assertions. *DeWall v. Prentice,* 224 N.W.2d 428, 431 (Iowa 1974). Conduct amounting to false misrepresentation or concealment needs to be deceptive or fraudulent. *Holden v. Construction Mach. Co.,* 202 N.W.2d 348, 355–56 (Iowa 1972).

The repair of defective goods does not in itself rise to the level of deception. Neither do we believe that repairs accompanied by assertions that they will cure the defect generally amount to false misrepresentation. To be deceptive or fraudulent there must be some evidence that such repairs and assertions were not only made to conceal the true condition of the product, but also with the intent to mislead the injured party into the trap of the time bar. When such equitable grounds have not been established by clear and convincing evidence, it may not serve as a deterrent to the running of the statute of limitations. *Coachman,* 329 N.W.2d at 651; *Holden,* 202 N.W.2d at 356.

■ When we examine the evidence in the light most favorable to plaintiffs, we find the repairs and verbal assertions do not meet the required proof. Ed Meier said that he called the dealer when he had a problem and discussed whether the pump was sufficient. He quoted Kramer Brothers as saying "there is nothing wrong with that pump." He said, "[T]hey had told us different things. That the pump was fine. They would make a few minor adjustments and that would be about it." When plaintiffs' son Mark was asked what the Kramer Brothers said when they came out and inspected the system, he answered by stating that "they said everything was working fine ... they said the pumps are fine."

We do not believe that a jury could reasonably infer that by making the alterations and repairs, the dealer intended to mislead plaintiffs so that they would not bring a timely suit. There is no evidence that either plaintiffs or defendants were operating under the assumption that litigation was possible. Rather than an attempt to lull plaintiffs into inaction, the evidence points to a dealer which was attempting to

remedy, possibly negligently, plaintiffs' problems. It is noteworthy that these repairs and assurances continued well past the limitations period. Consequently, we conclude that under these facts the claim of equitable estoppel was not available to plaintiffs and the issue should not have been submitted to the jury.

This determination precludes further consideration of plaintiffs' theories of recovery based on breach of contract and the implied warranty of fitness. Both of these actions accrued upon the installation of the two additional milking units in 1978 or at the time of replacement of the units in 1979. Consequently, the statute of limitations would have run prior to the commencement of the action in 1985.

■ II. *Negligent misrepresentation.* We now address the verdict based on negligent misrepresentation. In division IV of their petition, plaintiffs pled this theory based on the purchase of the milking system with four and then an additional two units. They alleged matters which occurred between July 27, 1977 and January 12, 1978. In its instructions the trial court extended the period, requiring proof of misrepresentation between January 1978 and October 1984. Consequently, the jury had the opportunity to consider alleged misrepresentations that were not time barred.

The issue on appeal is whether this theory of recovery is available to plaintiffs under this record, especially for the period after the two units were added in 1978. Defendants preserved error on this issue by objecting to the instruction and also moving for directed verdicts. Defendants asserted that the claims were barred, that the breach of contract and warranty actions were disguised as negligence claims and that there was insufficient evidence on each of the required elements.

On appeal it is defendants' contention that any statements that could be characterized as negligent misrepresentations were made before the purchase of the additional units in 1978 and therefore barred by the statute of limitations. They also claim that no showing was made that the dealer

had a financial interest in supplying information to the plaintiffs.

We may dispose of any claim of negligent misrepresentation prior to May 14, 1980. Our determination that equitable estoppel was unavailable to the plaintiffs allows the period of limitations to bar claims prior to that date.

Our court has recognized the tort of negligent misrepresentation. *Beeck v. Kapalis*, 302 N.W.2d 90, 96–97 (Iowa 1981); *Ryan v. Kanne*, 170 N.W.2d 395, 402 (Iowa 1969). In both *Beeck* and *Ryan* we referred to section 552 of the Restatement (Second) of Torts (1977) which details in pertinent part the necessary proof as follows:

> One who, in the course of his business, profession or other employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Defendants challenge the existence of evidence of their financial interest in supplying information to the Meiers. This calls into question whether a dealer, which later services and repairs the product that it sells, is responsible under this tort[2] for information transmitted after the sale and during service and repair calls. The evidence is clear that after May 1980 the only representations made were that the pump was fine. For the purpose of this discussion, however, we will assume that these statements were made as an extension of the dealer's role as a retail merchant.

Our first inquiry concerns who may be a wrongdoer under this tort. We have previously recognized that a person in the profession or business of supplying information or opinions owes a duty of reasonable care to clients or others. *Larsen v. United Fed. Sav. & Loan Ass'n*, 300 N.W.2d 281, 287 (Iowa 1981) (savings and loan company owes duty to home buyer with respect to appraisal); *Ryan*, 170 N.W.2d at 403 (accountant owes duty to prospective investors in preparing financial statements); *McCracken v. Edward D. Jones & Co.*, 445 N.W.2d 375, 382 (Iowa App.1989) (investment broker liable for false information supplied to investor). We have refused to extend the application of this tort to statements made during the course of litigation. *Beeck*, 302 N.W.2d at 97. Plaintiffs have cited no cases, and we know of none in this jurisdiction, that extend this duty to a person who both sells and services retail merchandise.

We believe that the duty recognized under the tort of negligent misrepresentation is generally not applicable to a retailer in the business of selling and servicing his merchandise. One commentator speaking to this tort states:

> When the aggrieved person is a buyer, who does not complain of the negligent performance of a service but rather of misrepresentation by a seller ... the options have been to sue on the contract or to sue in deceit, without a middle ground consisting of actionable negligence."

Hill, *Damages For Innocent Misrepresentation*, 73 Colum.L.Rev. 679, 688 (1973). The author differentiates between the person engaged in the business or profession of supplying guidance to others and those commercial transactions where the parties are dealing at arm's length. *Id.* at 685–88. Depending on the parties' agreement, the law of contract and warranty may provide the more appropriate remedies for misstatements made during the sale and servicing of a product.

The difference in liability for misinformation between a vendor of merchandise and a person supplying information and advice because of a special relationship between the parties is discussed in 1 F. Harper & F. James, *The Law of Torts* section 7.6, at 545–46 (1956). The authors, when discussing the sale of chattel, state: "An honest misrepresentation, although made without reasonable grounds, does not create liabili-

---

2. We do not have before us the issue of defendants' negligence growing out of their performance on the contract to service plaintiffs' system.

**582**

ty." *Id.* at 546. An Illinois court similarly concluded that liability under this tort attached to those in the business of supplying information and not to those selling merchandise. *Black, Jackson & Simmons Ins. Brokerage, Inc. v. IBM*, 109 Ill.App.3d 132, 64 Ill.Dec. 730, 733, 136, 440 N.E.2d 282, 284 (1982); *see also Western Energy, Inc. v. Georgia–Pacific Corp.*, 55 Or.App. 138, 145–46, 637 P.2d 223, 228 (1981). We agree with this view.

We conclude that there are no facts in the record to show that the dealer was in the business of supplying information to others as contemplated by the Restatement. Rather, the record indicates that Kramer Brothers were selling and servicing merchandise. In addition to the limitations bar, any representations made while repairing the system do not fall under this theory of recovery. Although they later rendered an opinion about the fitness of the pump, Kramer Brothers were employed to service and repair the product. Plaintiffs' claim is therefore not actionable under this theory of recovery. We believe that the court erred in submitting this theory to the jury.

III. *Summary.* We conclude that the trial court erred in failing to direct a verdict as a matter of law on all causes of action which accrued prior to May 14, 1980. We also conclude that any representations made by defendants after that date are not actionable under the tort of negligent misrepresentation. For these reasons we reverse and remand for an order dismissing plaintiffs' action.

REVERSED AND REMANDED.