**Richard E. CONNOLLY, Jr.,**
**Appellant/Cross–**
**Appellee,**

v.

**John L. BAIN, C. Dale Hoing, John McClain, Physicians Management Group Corporation, and BCH Corporation, Appellees/Cross–Appellants.**

No. 90–1348.

Court of Appeals of Iowa.

Feb. 25, 1992.

Jim Peterson and Lawrence L. Marcucci, West Des Moines, for appellant.

Roger T. Stetson and Margaret C. Callahan of Belin, Harris, Lamson, McCormick, Des Moines, for appellees.

Heard by DONIELSON, P.J., and HAYDEN and HABHAB, JJ.

HAYDEN, Judge.

Plaintiff, Richard Connolly, Jr., was a participant in a joint venture with defendants, John Bain and C. Dale Hoing. In 1987 the participants perceived a need for a new insurance product which would provide medical malpractice coverage for tail liability or prior acts coverage. To determine the feasibility of their ideas and assumptions regarding the proposed product, the participants sought actuarial advice from Spencer Gluck. Gluck determined the business could be profitable, albeit risky. The participants also retained Bruce Foudree, an attorney, to provide legal advice.

Bain, Connolly, and Hoing formalized their relationship in a preincorporation agreement dated February 1, 1988. They agreed to share equally in the ownership of the product and to share expenses equally. They also agreed to a noncompetition provision. Finally, they agreed not to disclose information concerning the product to a third party without prior execution of a nondisclosure agreement by the third party. During 1988 the participants concentrated on developing a business plan, formulating a marketing strategy, creating an insurance policy, and soliciting capital.

In June 1988 Bain, Connolly, and Hoing formed BCH Corporation with each owning one-third of the company's stock. Foudree advised the participants of the need for a shareholders' agreement to settle potential disputes among themselves if they wanted to attract capital investors. A letter drafted by Foudree suggested including a provision certain actions could only be taken by unanimous consent or veto in order to protect minority shareholders. On June 23, 1988, Forum Re Holding, Inc. made an offer to invest $3 million in the product subject to Bain, Connolly, and Hoing reaching a shareholders' agreement. That offer was never formally accepted or rejected.

By June 1988 the participants had developed serious problems concerning their personal and business relationship. Bain and Hoing were concerned Connolly was not devoting his full attention to the project, and they did not trust him. Connolly was developing a distrust for Bain and Hoing and concluded they were attempting to exclude him from the project. Apparently, because of the problems Bain and Hoing were having with plaintiff, they contacted John McClain, a stock broker, and looked into ways to minimize Connolly's role in the operation of the business.

Foudree's law firm prepared a proposed stockholders' agreement during the summer of 1988. That agreement was inconsistent with the shareholders' agreement previously outlined by Foudree. The provisions protecting the interests of minority stockholders were replaced by provisions oppressive to minority stockholders. One provision, for example, allowed BCH, at its option, to purchase the stock of any stockholder who casts a vote contrary to the votes of the majority stockholders. Connolly refused to sign the stockholders' agreement. During this time Connolly threatened to develop the product on his own.

On September 29, 1988, an organizational meeting for the business was held. By this time, relations between the participants had further deteriorated, and McClain had become fully involved in BCH. Prior to the organizational meeting Connolly proposed a shareholders' agreement containing protection for minority shareholders consistent with the provisions initially proposed by Foudree's firm, including unanimous voting requirements on several issues. In addition, Connolly suggested modifying the noncompetition restriction to allow BCH exclusive rights to the product for at most seven months. The parties reached no agreement.

At the organizational meeting Connolly, Bain, and Hoing were elected to the board of directors. By majority vote, the directors elected Bain president, Hoing vice-president, and McClain treasurer. Connolly was not elected to any position. On September 29, 1988, Bain, Hoing, and McClain met with potential investors in Chicago. Connolly was not informed of that meeting.

Because the participants could not agree on the provisions of the shareholders' agreement, Bain, Hoing, and McClain decided to pursue the business without Connolly. On October 6, 1988, Bain, Hoing, and McClain formed the corporation subsequently named Physicians Management Company, U.S.A. (PMC). Bain, Hoing, and McClain were the sole shareholders, officers, and directors.

Connolly was not idle during this time. On September 30, 1988, Connolly approached a potential capital source to discuss financing an insurance product. It is unclear whether Connolly was acting on his own or for BCH. In addition, he attempted to incorporate under the same corporate name chosen by Bain, Hoing, and McClain.

In October 1988 Bain, Hoing, and McClain met with Forum Re to discuss alternatives to Forum's earlier offer. On December 16, 1988, Bain, Hoing, and McClain entered into a letter of intent in which Forum Re agreed to provide $1.5 million as operating capital for the product. Neither Connolly nor BCH were parties to this agreement. From the operating capital, Bain, Hoing, and McClain each received a salary of $60,000 per year plus benefits.

After a series of meetings in January 1989, BCH Corporation was dissolved. At the time of dissolution, BCH had no financial assets but owned the business plan and insurance policy. Bain and Hoing granted Connolly the right to use the business plan and insurance policy. Bain and Hoing also assigned their rights in the BCH business plan and insurance policy to PMC in exchange for PMC's assumption of BCH's debt.

Defendants' company attempted to develop a casualty-based medical malpractice product for tail liability. By the date of trial, PMC had sold only one policy and was $1.275 million in debt.

Connolly brought an action against defendants and their corporation for conversion and a claim against the individual defendants for breach of a fiduciary duty to BCH and plaintiff. Defendants Bain and Hoing counterclaimed for breach of an oral contract. The district court found against

plaintiff on the conversion claim but for plaintiff on the breach of fiduciary duty claim. The district court refused to award plaintiff lost profits and rejected plaintiff's claim for lost salary and benefits. Plaintiff was awarded $14,000 for his out-of-pocket expenses, and the district court imposed an equitable trust in favor of plaintiff against one-third of the stock in PMC. Finally, the district court denied plaintiff punitive damages.

The district court subsequently denied plaintiff's motion to enlarge pursuant to Iowa Rule of Civil Procedure 179(b). The district court granted, in part, defendants' motion to enlarge regarding plaintiff's out-of-pocket expenses. The judgment against defendants was not changed, however. Connolly appeals. Only defendants Bain and McClain cross-appeal.

## I. *Scope of Review.*

■ Our review is for correction of errors at law. Iowa R.App.P. 4. Findings of fact in jury-waived cases have the effect of a special verdict and are binding on us if supported by substantial evidence. *Id.;* Iowa R.App.P. 14(f)(1). Evidence is substantial or sufficient when a reasonable mind would accept it as adequate to reach the same findings. *Waukon Auto v. Farmers & Merchants Sav. Bank,* 440 N.W.2d 844, 846 (Iowa 1989).

## II. *Plaintiff's Claims.*

Connolly claims the district court erred in failing to award damages for lost profits, lost income and benefits, and punitive damages. We address each issue in turn.

### A. Lost Profits.

■ Connolly asked for over $28 million in anticipated profits and accumulated equity in the company based on projections from Gluck's actuarial data. The district court refused to award plaintiff lost profits, finding plaintiff's evidence lacked credibility and such damages were too speculative to be recoverable. We agree.

Connolly's reliance on Gluck's figures to establish lost profits ignores reality. Gluck's projections in the business plan

clearly were not met. PMC was able to sell only one policy. The difficulties experienced in obtaining regulatory approval limited the product's market in a manner inconsistent with the assumptions underlying the business projections. Furthermore, potential profits from a new commercial enterprise are generally too remote and speculative to be recoverable because there is no available data of past business from which anticipated profits can be established. *Harsha v. State Savings Bank*, 346 N.W.2d 791, 797 (Iowa 1984). In the present case the record reveals no factual basis from which to calculate lost profits with reasonable certainty. We affirm on this issue.

### B. Lost Income & Benefits.

We turn to Connolly's claim for damages for lost income and benefits. The district court refused to award Connolly an amount equal to the $60,000 annual salary, plus benefits, that Cain, Hoing, and McClain each received from PMC. The district court determined Connolly failed to prove he would have been employed in the same capacity as the other three participants in the venture. We agree.

■ Majority shareholders have the right "to control the affairs of a corporation, if done so lawfully and equitably, and not to the detriment of minority stockholders." *Cookies Food Products v. Lakes Warehouse*, 430 N.W.2d 447, 454 (Iowa 1988). Courts are disinclined to interfere in internal corporate operations involving management decisions, subject to the principle of majority control. *Wolf v. Lutheran Mutual Life Insurance Co.*, 236 Iowa 334, 341–42, 18 N.W.2d 804, 809 (1945); *Wilkes v. Springside Nursing Home, Inc.*, 370 Mass. 842, 849, 353 N.E.2d 657, 662 (1976). The selection and retention or dismissal of officers, directors, and employees are examples of such internal corporate operations. *Id.*

■ Although Connolly understood he would be employed by the corporation, the preincorporation agreement does not support his understanding. That agreement addressed only the issue of ownership and equity interests. Nothing in the preincorporation agreement indicates Connolly was entitled to employment merely by virtue of his equity interest in the corporation. Furthermore, the record supports the district court's finding that Connolly's conduct and demeanor justified Bain and Hoing not to employ Connolly. Connolly was a recalcitrant shareholder who repeatedly threatened to develop the product on his own. He devoted less time developing the product than Bain and Hoing. We affirm on this issue.

### C. Punitive Damages.

■ Connolly next claims the trial court erred in failing to award him punitive damages. To justify an award of punitive damages, the wrongful conduct must be committed with willful or reckless disregard for the right's of another. *Berryhill v. Hatt*, 428 N.W.2d 647, 656 (Iowa 1988). Moreover, punitive damages are always discretionary. *Id.* Our review of the record causes us to conclude defendants' conduct did not rise to a level which justifies an award of punitive damages.

### III. *Defendants' Cross-appeal.*

Defendants Bain and McClain cross-appeal, claiming the district court erred in finding defendants breached a fiduciary duty and in requiring defendants to reimburse plaintiff for start-up expenses. We address each issue in turn.

### A. Fiduciary Duty.

Defendants claim the district court erred in finding they breached a fiduciary duty to Connolly and BCH. Defendants assert, contrary to the district court's finding, they neither squeezed Connolly out of the business nor seized the BCH business opportunity for themselves.

■ "As a fiduciary, one may not secure for oneself a business opportunity that 'in fairness belongs to the corporation.'" *Cookies Food Products*, 430 N.W.2d at 452 (quoting *Rowen v. LeMars Mut. Ins. Co. of Iowa*, 282 N.W.2d 639, 660 (Iowa 1979)). Defendants maintain the

purpose of PMC was to pursue a "parallel path" by taking the same steps regarding capitalization and product development BCH would have taken absent the management deadlock. Connolly maintains the purpose of PMC was to pursue the insurance product which pursuant to the preincorporation agreement was the exclusive property of Bain, Connolly, Hoing, and BCH. We determine PMC was not pursuing a "parallel path." Rather, PMC's path began where BCH's path ended.

Defendants contend by pursuing the product through PMC they were not seizing a corporate opportunity because BCH could not avail itself of the opportunity with Forum Re in the absence of a shareholders' agreement.

> [A] finding of "corporate opportunity" will be denied (a) wherever the fundamental fact of good faith is determined in favor of the director or officer charged with usurping the corporate opportunity, or (b) where the company is unable to avail itself of the opportunity, or (c) where availing itself of the opportunity is not essential to the company's business, or (d) where the accused fiduciary does not exploit the opportunity by the employment of his company's resources, or (e) where by embracing the opportunity personally the director or officer is not brought into direct competition with his company and its business. It will be observed that all of the foregoing elements are stated disjunctively and it would therefore seem that the absence of any one of them is sufficient to defeat such claim of corporate opportunity as is made in this case.

*Sauer v. Moffitt*, 363 N.W.2d 269, 273 (Iowa App.1984) (quoting *Ontjes v. MacNider*, 232 Iowa 562, 579–80, 5 N.W.2d 860, 869–70 (1942)). Although it is true a shareholders' agreement was not reached, it was defendants' insistence on the oppressive provisions of the proposed stockholder agreement which prevented BCH from obtaining a shareholders' agreement. We find all foregoing elements absent in the present case. We determine the Forum Re financing opportunity constituted a corporate opportunity of BCH.

Defendants additionally contend Connolly's own conduct precludes a finding of breach of a fiduciary duty. We find their contention without merit. Connolly did nothing Bain and Hoing were not already doing. Defendants are in no position to complain about Connolly's conduct.

**B.   Start-up Expenses.**

Finally, defendants assert the district court erred in requiring them to reimburse Connolly for start-up expenses because PMC has not reimbursed those expenses to Bain and Hoing. We reject defendants' assertion.

As a result of defendants' breach, Connolly was deprived of his equity participation in the venture and $14,000 out-of-pocket start-up expenses. In fashioning a remedy, the district court imposed an equitable trust in favor of Connolly against one-third of Bain and Hoing's stock in PMC and ordered joint and several liability against Bain, Hoing, McClain, and PMC in the amount of $14,000 to reimburse Connolly for his start-up expenses. We hold the district court's remedy was proper and accordingly affirm.

### IV.   *Conclusion.*

We affirm the judgment of the district court on all issues raised in this appeal. Costs of appeal are taxed one-half to appellant and one-half to appellees.

AFFIRMED.