**G & H SOYBEAN OIL, INC. and Marc Heiden, Individually, Plaintiffs,**

v.

**DIAMOND CRYSTAL SPECIALTY FOODS, INC., Defendant.**

Civ. No. 4–91–CV–10393.

United States District Court, S.D. Iowa, C.D.

Aug. 10, 1992.

George A. LaMarca, Joel H. Dorman, LaMarca & Landry, P.C., West Des Moines, Iowa, for plaintiffs.

Randall H. Stefani, H. Richard Smith, Ahlers, Cooney, Dorweiler, Haynie Smith & Allbee, P.C., Des Moines, Iowa, for defendant.

## ORDER

LONGSTAFF, District Judge.

Plaintiffs, G & H Soybean Oil, Inc. ("G & H"), and Marc Heiden, brought this action for damages against Defendant seeking to recover for breach of contract. Defendant has moved for partial summary judgment, and Plaintiffs have resisted the motion. Oral argument was heard by the court August 6, 1992.

## I. BACKGROUND

Plaintiff G & H Soybean Oil, Inc., ("G & H") was formed April 1, 1990, (it incorporated in August, 1990) to process and market soybean cooking oil under the trade name, "Homestead Farms." Plaintiff Marc Heiden is Vice President and a principal shareholder of G & H.

According to its business plan, G & H did not intend to produce oil itself. Rather, it intended to bottle "Archer S," an oil produced by Archer Daniels Midland Company ("ADM"), under the Homestead Farms label. On May 21, 1990, Defendant, Diamond Crystal Specialty Foods, Inc. ("Dia-

mond"), orally agreed with G & H to bottle, label, and package the Homestead Farms oil.

Between August and December, 1990, G & H officials made several preliminary marketing attempts, touting the product as the only soybean cooking oil produced and bottled in Iowa. In addition, several newspapers and trade publications reported that G & H would be purchasing its oil from ADM.

In early December, 1990, G & H notified Diamond that an initial bottling run of approximately 77 cases should be completed by early January, 1991. Instead of bottling the Archer S oil, however, Defendants allegedly used an inferior oil produced by Cargill, Inc. These bottles were then distributed directly to members of the Iowa Soybean Association as part of a promotional campaign. In addition, on January 23, 1991, Defendant notified G & H that, effective immediately, it would no longer bottle the Homestead Farms product.

Plaintiff G & H seeks damages for breach of contract, constructive fraud, fraud at law, fraudulent misrepresentation and negligent misrepresentation. Plaintiff Marc Heiden also seeks damages for constructive fraud, fraud at law, fraudulent misrepresentation and negligent misrepresentation.

Defendant has moved for partial summary judgment, claiming that damages should not be awarded to G & H based on lost profits, damage to business reputation, damage to trade name, or negligent misrepresentation. Moreover, Defendant moves for summary judgment on all claims of Marc Heiden, on the basis that he has not alleged injuries which are separate and distinct from those of the corporation.

## II. APPLICABLE LAW

■ Summary judgment is properly granted when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party must establish its right to judgment with such clarity there is no room for controversy.

*Jewson v. Mayo Clinic,* 691 F.2d 405, 408 (8th Cir.1982).

■ The resisting party must set forth specific facts showing there is a genuine issue for trial and may not rely solely on legal conclusions to prove there is a genuine issue of material fact justifying denial of summary judgment. Fed.R.Civ.P. 56(e). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

■ In deciding whether to grant a motion for summary judgment, the district court must view the evidence in favor of the party opposing the motion and give that party the benefit of all reasonable inferences. *Kegel v. Runnels,* 793 F.2d 924, 926 (8th Cir.1986).

### A. Damages from Lost Profits

■ Iowa recognizes the "new business rule," under which potential profits from an unestablished business generally are considered too speculative to serve as a basis for a damages award. *Lakota Girl Scout Council, Inc. v. Harvey Fund–Raising Management, Inc.,* 519 F.2d 634, 640 (8th Cir.1975); *Harsha v. State Savings Bank,* 346 N.W.2d 791, 797 (Iowa 1984). This rule is not absolute. The basic question is " 'whether a prospective loss of net profits has been shown with reasonable certainty.' " *Harsha v. State Savings Bank,* 346 N.W.2d at 798 (quoting *Standard Machinery Co. v. Duncan Shaw Corp.,* 208 F.2d 61, 64 (1st Cir.1953)).

*Harsha* does not, as suggested by Defendant, set forth specific elements which must be established before considering evidence of lost profits. *See* Defendant's Memorandum of Authorities in Support of Motion for Partial Summary Judgment at 3. In reality, the "elements" listed by Defendant as controlling are case-specific facts cited by the court as supportive of its

decision. *Harsha v. State Savings Bank,* 346 N.W.2d at 798–799. The key test arising from *Harsha* is whether lost profits can be shown with "reasonable certainty." *Id.* at 798.

■ Professor Dolich, the expert witness obtained by Plaintiff, appears to be qualified to provide opinion testimony as to lost profits. In addition, the fact Plaintiffs' data stems largely from their own business plan does not in and of itself discredit the data. The Iowa Court of Appeal's decision in *Connolly v. Bain,* 484 N.W.2d 207 (Iowa Ct.App.1992) can be distinguished on this issue. First, the multi-million dollar profit projections in *Connolly* were clearly excessive in light of the fact the company sold only one policy. *Id.* at 210. G & H's business plan in the present case is far more conservative. In addition, unlike the business in *Connolly,* G & H has proven its viability by selling "thousands" of bottles of oil (according to Plaintiffs' counsel).

Perhaps more importantly, the *Connolly* court was reviewing a decision already made by the factfinder—not ruling on a preliminary motion as a matter of law. The *jury* must determine the credibility of Plaintiffs' data. *See also Upjohn v. Rachelle Laboratories, Inc.,* 661 F.2d 1105, 1114 (11th Cir.1981) (flaws in plaintiff's projections go to weight, not sufficiency, of evidence).

It is therefore inappropriate to rule as a matter of law that Plaintiffs cannot prove lost profits to a reasonable certainty. If the issue of lost profits is submitted to a jury, however, any award will be closely scrutinized.[1]

### B. Damage to Business Reputation and Trade Name

■ Defendant next seeks to preclude damages based on injury to G & H's business reputation and trade name. As noted by Defendant, damage to both business reputation and trade name can be equated with damage to goodwill. *See Superwood Corp. v. Larson–Stang, Inc.,* 311 F.2d 735,

742 (8th Cir.1963); 38 Am.Jur.2d *Good Will* § 6 (1968).

Neither the Eighth Circuit nor the Iowa Supreme Court has determined whether damage to goodwill can be awarded to a new business. Due to the early date, the court also is reluctant to use the 1935 Virginia case cited by Defendants as a basis for its decision. *See Sinclair Refining Co. v. Hamilton & Dotson,* 164 Va. 203, 178 S.E. 777, 782 (1935) (a new business has not established goodwill or reputation sufficient to merit damages specifically for loss to goodwill).

In its Reply Brief, Defendant correctly states that damages to the reputations of Gerleman and Heiden are irrelevant to the issue of damage to G & H's reputation or the Harvest Farms tradename. However, the court is not convinced the ten months of marketing conducted by Plaintiffs prior to the alleged breach failed to develop *any* goodwill. Clearly, G & H had already made significant progress with its largest potential client base—members of the Iowa Soybean Association. The issue, therefore, is not whether G & H had established a reputation prior to the breach, but whether it can prove damages to this reputation sufficient to warrant recovery.

■ Several courts have noted that business reputation and goodwill are tied closely with the production of profits. *See e.g. Roundhouse v. Owens–Illinois, Inc.,* 604 F.2d 990, 995 (6th Cir.1979); *Agr. Services Ass'n, In. v. Ferry–Morse Seed Co.,* 551 F.2d 1057, 1071 (6th Cir.1977). It is reasonable, therefore, that any claim for loss to goodwill for a new business must be proven according to the "reasonable certainty" test established in *Harsha. Harsha v. State Savings Bank,* 346 N.W.2d at 798. This holding is consistent with courts allowing claims for loss to goodwill in general, which have required specific proof as to loss in value. *Roundhouse v. Owens–Illinois, Inc.,* 604 F.2d at 995 (without specific data, jury's assignment of damages for

---

**1.** The court takes note of Defendant's motion to limit the lost profits award pursuant to rule 56(d) of the Federal Rules of Civil Procedure. However, a ruling on this issue is deferred pending return of the jury verdict.

goodwill would have been "sheer speculation"); *Westric Battery Co. v. Standard Electric Co., Inc.*, 522 F.2d 986, 988 (10th Cir.1975).

The court thus declines to grant summary judgment on this issue. However, damages on this issue must be shown with a "reasonable certainty," and, if awarded, will also be subjected to close scrutiny.

### C. Negligent Misrepresentation

In *Meier v. Alfa–Laval, Inc.*, 454 N.W.2d 576, 581, (Iowa 1990), the Iowa Supreme Court stated: "[w]e believe that the duty recognized under the tort of negligent misrepresentation is generally not applicable to a retailer in the business of selling and servicing his merchandise." Rather, when the parties are involved in a commercial, arms-length transaction, "the law of contract and warranty may provide the more appropriate remedies for misstatements made during the sale and servicing of a product." *Id.* Only those businesses supplying information, rather than selling and servicing merchandise, are subject to the tort of negligent misrepresentation. *Id.* at 581–82 (citing *Black, Jackson & Simmons Ins. Brokerage, Inc. v. IBM*, 440 N.E.2d 282, 284 (Ill.Ct.App.1982)). In addition, the *Meier* court's reasoning was recently adopted by the Eighth Circuit. *Budget Marketing, Inc. v. Centronics Corp.*, 927 F.2d 421, 428–29 (8th Cir.1991) (parties not in business of supplying guidance, and thus, *Meier* bars negligent misrepresentation claim).

Plaintiffs argue that Defendant was not in the business of supplying or selling soybean oil, and thus the case does not fit within the context of *Meier. See* Plaintiffs' Brief in Support of Resistance to Defendant's Motion for Partial Summary Judgment at 17. However, Diamond *is* in the business of bottling, labeling, and packaging food products—exactly the services Diamond contracted to provide. In addition, one of the parties involved in *Budget Marketing* provided marketing and subscription *services*, thus nullifying Plaintiffs' argument that the *Meier* holding is limited to retail organizations. *Budget Marketing, Inc. v. Centronics Corp.* at 423.

Furthermore, there is no evidence Plaintiffs contracted to purchase *information services* from Defendant. Damages from Plaintiffs' reliance on Diamond's "superior knowledge" are more appropriately discussed under the claim of fraudulent misrepresentation. Consequently, the court finds the facts presented fall within the confines of *Meier*, and grants summary judgment on this count.

Marc Heiden's individual claim for negligent misrepresentation is grouped with his other claims below.

### D. Claims on Behalf of Marc Heiden

Defendant also seeks dismissal of all claims for damages filed on behalf of Marc Heiden, Vice President and a principal shareholder of G & H.

Under Iowa law, "shareholders have no claim for injuries to their corporations by third parties unless within the context of a derivative action ... [or] if the harm to the corporation also damaged the shareholder *in his capacity as an individual* rather than as a shareholder." *Cunningham v. Kartridg Pak Co.*, 332 N.W.2d 881, 883 (Iowa 1983) (emphasis added). According to *Cunningham*, to bring an individual claim for damages, the shareholder must allege either "that the third-party owed him a special duty *or* that he suffered an injury separate and distinct from that suffered by the other shareholders. *Id.*

Plaintiffs' counsel alleged during oral argument that G & H owed Heiden a special duty, thus fulfilling the first *Cunningham* requirement. However, when asked by the court which facts support this duty, counsel replied:

> when Mr. Heiden went to G & H, he told them that *they* were looking for a bottler to go long term, that *they* didn't have any experience in bottling, packaging, capping, sealing, labeling and the handling of edible food products for consumer marketing and consumption.

Transcript of August 6, 1992 (not paginated) (emphasis added). Clearly, even Plain-

tiffs' counsel believed Heiden was negotiating on behalf of G & H. It was not Heiden who was looking for a bottler—"they" or G & H as an entity—needed a bottler. At the very least, "they" refers to Gerleman, the president of G & H, and Heiden. There is no evidence, however, to suggest Diamond thought it was contracting with an individual.

■ Alternatively, Plaintiffs argue in their brief that Heiden's injuries fulfill the second *Cunningham* test. According to Plaintiffs, Heiden was an *independent contractor,* rather than an employee, of G & H, and has been forced to give up consulting fees as a result of Diamond's breach. However, no facts are provided to support his "independent contractor" status. In his deposition, Heiden describes his compensation as "salary and bonuses," and states that he did not have an actual contract with G & H—both of which are inconsistent with an independent contractor relationship. (See p. 248–249 of deposition attached to Defendant's brief).

Assuming arguendo Heiden was an independent contractor, all of Heiden's negotiations with Diamond were nevertheless as an *agent* of G & H. There was not an individual contract between Heiden and Diamond. In addition, as noted by Defendant, if Heiden's injury were considered separate and independent, "any third party who relied on a corporation as a source of revenue would have a cause of action if the corporation were harmed." Defendant's Reply Brief at 4. In *ITT Diversified Credit Corp. v. Kimmel,* 508 F.Supp. 140, 144–45 (N.D.Ill.1981), which is cited favorably in *Cunningham,* the court refused to recognize any causes of action for injuries derived "solely from [the claimant's] status as president and sole shareholder," unless the alleged conduct was *directed* to him as an individual.

Finally, the fact Heiden personally guaranteed a loan on behalf of G & H does not create a separate and distinct injury. *See ITT Diversified Credit Corp. v. Kimmel,* 508 F.Supp. at 144. As stated in *Cunningham,* "[n]aturally, the loss fell heaviest on those who had invested the most, but that

does not make [the plaintiff's] injury separate and distinct from that of any other shareholders." *Cunningham v. Kartridg Pak Co.,* 332 N.W.2d at 884.

■ Heiden also claims he should be compensated—presumably in equity—for giving up "successful and gainful employment." However, there is no evidence suggesting Heiden had significant dealings with Diamond until *after* Heiden made his decision to leave his prior employment. Diamond in no way induced Heiden into terminating his prior employment, and thus "reliance" cannot be viewed as a basis for damages.

## III. CONCLUSION

For the reasons expressed above, Defendant's Motion for Partial Summary Judgment is DENIED on the issues of damages for lost profits, and harm to G & H's business reputation and trade name. Defendant's Motion is GRANTED as to G & H's claim for negligent misrepresentation and as to all claims filed on behalf of Marc Heiden, individually.

IT IS SO ORDERED.